IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                1:17-cr-3338-JMC

MILTON BOUTTE,
JOE DIAZ,
ARTURO VARGAS,
and GEORGE LOWE,

        Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PRODUCTION OF EXCULPATORY MATERIAL; DENYING AS MOOT DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF DISCOVERABLE MATERIALS PURSUANT TO RULE 16; DENYING AS MOOT JOINT MOTION TO CONTINUE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF UNREDACTED DISCOVERY AND THE IDENTIFICATION OF CONFIDENTIAL INFORMANTS, GOVERNMENT EMPLOYEE WITNESSES, AND LAW ENFORCEMENT OFFICER WITNESSES; AND GRANTING UNITED STATES' MOTION TO COMPEL DEFENDANT BOUTTE TO DISCLOSE A WRITTEN SUMMARY OF TESTIMONY AND OPINIONS OF EXPERT WITNESSES**

A grand jury indicted Defendants George Lowe and Milton Boutte with, among other things, knowingly and intentionally defrauding the government and conspiring to do the same. The government has filed one motion to compel discovery and Defendants have filed two.[1]  On September 14, 2018, the parties appeared before the Court for a hearing on the motions.[2]

---

[1] Defendants Joe Diaz and Arturo Vargas accepted plea agreements in this matter.  Prior to accepting his plea, Defendant Vargas filed a Motion to Compel Disclosure of Discoverable Materials Pursuant to Rule 16.  The Court denies Vargas' motion as moot.

[2] In April 2018, Defendants filed a Joint Motion to Continue the deadlines for defense experts and reports.  Since the filing of that motion, the Court has amended the scheduling order.  Accordingly, the Court denies Defendants' joint motion as moot.

# I.    Background

Defendants were affiliated with the Big Crow Program Office ("BCPO") at Kirtland Air Force Base in Albuquerque, New Mexico, and allegedly committed their crimes through their ties to that office.  Near the end of BCPO's run—"not later than 2004," according to the indictment—Defendant Milton Boutte, the then-Director of BCPO, allegedly began to engage in illegal activities with others "to obtain money for [BCPO]."  Specifically, the indictment alleges that Boutte "conspired and schemed" with Defendant George Lowe and "other lobbyists, consultants, and contractors" to lobby Congress and other government agencies for money for the benefit of BCPO.  The indictment alleges that Boutte and Lowe realized they could misappropriate funds from Small Business Act § 8(a) sole-source contracts to pay for Lowe's lobbying efforts and other unauthorized expenses.  But to do so, they needed small businesses.  Thus, the two men allegedly further "conspired and schemed" with Defendants Joe Diaz and Arturo Vargas, two small business owners, to "fraudulently obtain and exploit" § 8(a) sole-source contracts for that illegal purpose.  Diaz and Vargas allegedly misappropriated at least $506,000 in funds from two contracts to pay Lowe for his lobbying activities.

# II.    Applicable Law

A defendant may seek discovery under multiple legal authorities.  The Due Process Clause requires that the government disclose any evidence to the defendant that "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  The Supreme Court has clarified that a defendant is entitled to receive exculpatory evidence even if he does not request it.  *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) ("Regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government.").  The Constitution does not, however, require the prosecution "to divulge every

possible shred of evidence that could conceivably benefit the defendant." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). And a reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted).

Even though the government has a demanding duty to disclose exculpatory information, it does not have to take affirmative steps to discover information it does not possess. *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001). But this does not mean the prosecutor can engage in willful ignorance. *Brady* requires a prosecutor to "disclose information of which [he or she] has knowledge and access." *United States v. Burton*, 81 F. Supp. 3d 1229, 1249 (D.N.M. 2015). The "prosecution" includes "not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, as well as . . . other arms of the state involved in investigative aspects of a particular criminal venture." *Smith*, 50 F.3d at 824 (internal citation and footnote omitted). Thus, although a prosecutor may be required to search files maintained by governmental agencies that are part of the prosecution team, a prosecutor does not have a duty to obtain evidence from agencies that are not part of the prosecution team. *Id.* This is because

> knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt "a monolithic view of government" that would "condemn the prosecution of criminal cases to a state of paralysis."

*United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *United States v. Gambino*, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)).

In addition to *Brady*'s discovery requirements, Federal Rule of Criminal Procedure ("Rule") 16(a) sets forth additional discovery obligations. Specifically, Rule 16(a)(1)(E) provides that the government must allow defendants access to documents and objects "within the government's possession, custody, or control" where "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." The Tenth Circuit has not yet defined "the government" for purposes of Rule 16. The courts that have defined "the government" for purposes of Rule 16 interpret the phrase to include only the prosecution team. *See United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989) ("Rule 16(a)(1)[(E)], requires only the production of documents in the hands of the prosecutor, any investigative unit under the prosecutor's control, and any other federal agency allied with the prosecution or involved in the prosecution of criminal litigation."); *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) ("Courts have construed the term 'government' in this rule narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general."); *United States v. Chalmers*, 410 F. Supp. 2d 278, 289 (S.D.N.Y. 2006) ("[T]he Court is not persuaded that the 'government' for purposes of Rule 16 should be any broader than the 'prosecution team' standard that has been adopted in the *Brady* line of cases."); *United States v. Weiss*, 2006 WL 1752373, *7 (D. Colo. June 21, 2006) (considering a defendant's request for documents from a non-party executive agency and concluding that no duty to disclose existed under *Brady* or Rule 16). Courts reason that the same concerns that exist in the *Brady* context—that a "monolithic view" of government would "condemn the prosecution of criminal cases to a state of paralysis"—apply with equal force in the Rule 16 context. *Chalmers*, 410 F. Supp. 2d at 289.

III.     <u>Analysis</u>

A.     <u>Defendant Boutte's First Motion to Compel</u>

Defendant Boutte filed a motion to compel but failed to articulate what he seeks from the Court.  He later filed a "Notice of Supplemental Authority in Support of Motion to Compel Production of Exculpatory Material."  Although the filing does not actually contain any supplemental authority, it does attach a chain of emails, which includes a list of eight items Defendant Boutte seeks from the government: (1) contract files that the contracting officer is required to maintain for each of the contracts in the indictment; (2) Ron Unruh's BCPO-related emails from 2004–2010; (3) all financial management files for the BCPO including Wide Area Work Flow ("WAWF") documents for each invoice in the indictment; (4) material related to the authorizations for "search of seizure" referenced in an earlier production; (5) material from the Defense Contract Audit Agency ("DCAA") responsive to a certain request as well as any Inspector General ("IG") or DCAA work papers for their audits; (6) electronic media referenced in an earlier production; (7) additional DCAA documents referenced in an earlier production; and (8) certain Small Business Administration and joint venture files.  The Court notes Boutte failed to present a coherent argument for why he needs access to these documents in his briefing.  However, at the hearing on the motion, the Court was able to extract some of the reasoning underlying the motion.

Boutte first asserts that the government has not provided him with all relevant contract files.  The United States represents that it has produced all relevant contract files in its possession.  At the motion hearing, Boutte asserted that the government did not provide him with files from the United States Property and Fiscal Office for Alaska or from the Alaska National Guard.  He also contended that the government did not produce files for multiple contracting officers on the

administrative side.  The Court grants Boutte's motion to the extent that it seeks the identities of the relevant contracting officers.  The government must produce all responsive and exculpatory contract files.  To ensure reasonable compliance, the parties shall meet and confer regarding this request.  If either party decides to file an additional discovery motion—either a motion to compel or a motion for a protective order—the moving party must provide the Court with specific information identifying the individual contracting officers and explain in its brief why the information either is or is not exculpatory or responsive to a relevant document request.  Boutte, at this point, has not provided the Court with sufficient information to order the government to turn over specific files.

To the extent this first request captures files of the so-called "graybeards"—Generals Ronald Hite, Jay Garner, and James Clapper—pursuant to *Brady* and Rule 16, the government must produce all exculpatory and/or relevant information in the possession of the prosecution team.  The Court does not require the government to seek this information from agencies or from former government employees who are not collaborating in Boutte's prosecution or who have not provided information to the government in connection with this case.  *Smith*, 50 F.3d at 824.

Boutte may, however, utilize Federal Rule of Criminal Procedure 17 to subpoena documents from government agencies that are not a part of the prosecution team.  Boutte must serve any subpoenas in accordance with regulations adopted pursuant to *United States ex rel Touhy v. Ragen*, 340 U.S. 462 (1951), and the Housekeeping Statute, 5 U.S.C. § 301, which allows the head of an Executive department to prescribe regulations for the conduct of its employees and for the custody, use, and preservation of its records, papers, and property.  To subpoena a government agent or government employee, a defendant must serve a *Touhy* notice.  *Touhy* notices are "so named because they comply with regulations promulgated by each government agency dictating

the specific procedures that must be followed in order to subpoena any employee of that agency, the use of which regulations was upheld by the Supreme Court in *Touhy*." *United States v. Rosen*, 520 F. Supp. 2d 802, 809 (E.D. Va. 2007) (internal footnotes omitted).

The Housekeeping Statute and *Touhy* allow for the "centralizing [of an agency's] determination as to whether subpoenas . . . will be willingly obeyed or challenged." *Touhy*, 340 U.S. at 468. Once a defendant complies with an agency's *Touhy* regulations, the agency head will either authorize compliance or assert a privilege. *United States v. Reynolds*, 345 U.S. 1, 7–8 (1953) ("There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." (internal footnote omitted)). The Housekeeping Statute, however, "does not and cannot confer on the Executive Branch the unilateral or unreviewable power to refuse to comply with a valid subpoena." *Rosen*, 520 F. Supp. 2d at 809. Ultimately, "if a defendant shows that the subpoena to compel testimony or documents is material to his defense, a court should 'order production of the evidence or the witness and leave to the Government the choice of whether to comply with that order.'" *Id.* (quoting *United States v. Rivera*, 412 F.3d 562, 569 (4th Cir. 2005)). If the government refuses to comply with the subpoena in these circumstances, such action "may result in dismissal or a lesser sanction." *Id.* This follows from the recognition that a defendant has a fundamental, constitutional right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI.

Boutte next requests all of Ron Unruh's BCPO-related emails from 2004 to 2010. The government represents that it has provided Boutte with all such emails in its possession. Boutte

has not pointed to any specific material that shows the government is misleading the Court. Accordingly, the Court denies this portion of Boutte's motion.[3]

Third, Boutte requests all financial management files for the BCPO and WAWF documents for each invoice in the indictment. The request also mentions Bates number document BCIR 0207. Because Boutte did not inform the Court about document BCIR 0207 in its motion, the Court relies on the government's representation. According to the government, BCIR 0207 is an investigative report that documented the collection of a disc that primarily contained information regarding a contract awarded to ATAMIR, a joint venture of one of the companies at issue in this case. Boutte has not shown why he is entitled to *all* of the BCPO's financial management files. Regardless, the government represents that it has produced all of the disc's contents. The WAWF is an information system the Department of Defense uses to enable government agencies and contractors to electronically submit and process contracts and invoices. According to the government, WAWF does not define a set class of documents. Its queries have shown that the WAWF information system contains only electronic copies of the contracts and contract modifications involved in this case. The government states it has produced all relevant contracts, modifications, and invoices separately from the WAWF system. Boutte has not specified what additional documents he seeks or how those additional documents would rebut the government's case in chief. Accordingly, the Court denies Boutte's motion to compel as to financial management files and WAWF documents.

Next, Boutte seeks to compel "the material related to the authorizations for search of seizure referenced in BCIR 0233–0242." The government notes that the authorizations themselves are in the Bates range Boutte cites. The government represents that it has produced all user-

---

[3] The government would be well-served, however, by reviewing its files to ensure that these emails have been produced.

generated documents that were available on the hard drives from Boutte and Unruh's computers, including all emails. The Court orders that Boutte and the government meet and confer regarding this request on or before **March 15, 2019** to ensure that the government has identified all materials it must provide under the Rules.

Fifth, Boutte asks for "the material from DCAA responsive to the request at BCIR 0251." He also seeks any IG or DCAA work papers related to their audits. The government states that it has provided Boutte with all applicable files in its possession as well as a substantial volume of investigative reports. Boutte has failed to show that he is entitled to any additional information from the government. The government has no obligation to produce reports, memoranda, or other internal government documents made by an attorney for the government or by another government agent in connection with investigating or prosecuting the case. Fed. R. Crim. P. 16(a)(2). Accordingly, the Court denies Boutte's motion to compel as to this fifth request.

Boutte also asks the Court to order the government to produce all "electronic media" referenced at BCIR 0252. The government represents that, in context, the phrase refers generally to the evidence in the case, which it has already disclosed. The Court orders that Boutte and the government meet and confer regarding this request on or before **March 15, 2019** to ensure that the government has identified all materials it must provide under the Rules.

Seventh, Boutte asks for the DCAA documents referenced at BCIR 0258. The government represents that the cited document refers to a PowerPoint that certain investigative agents made for prosecutors. The government states that it has produced the material the agents used to make the presentation. Pursuant to Rule 16(a)(2), the government is not obligated to disclose the PowerPoint presentation. The Court denies Boutte's seventh request.

Finally, Boutte requests the "SBA 8(a) and JV files that should exist." The government represents that it has produced the entire Small Business Association file and Boutte has not identified any undisclosed files. The Court cannot compel the production of something that does not exist. Accordingly, the Court denies Boutte's eighth request.

B.  Defendants Boutte and Lowe's Joint Motion to Compel

Defendants Boutte and Lowe filed a joint motion to compel. In that motion, they seek the production of unredacted discovery and the identification of confidential informants, government employee witnesses, and law enforcement officer witnesses. They assert that the identities of confidential informants and the contact information for government employee witnesses and law enforcement officers are necessary for them to ascertain the chain of events the government alleged.

Defendants, however, fail to bring any specific instances of redaction to the Court's attention. The government contends that Defendants did not consult them before filing this motion. The government represents that it is not aware of any redacted discovery other than discovery where the government redacted the first five digits of a witness's Social Security Number. This Court agrees with the government that Defendants have not supplied a basis for obtaining witnesses' complete Social Security Numbers. To the extent Defendants contend the government redacted additional information, their failure to support such an argument compels the Court to reject their request to require the government to produce unredacted copies.

In its response, the government also states that no confidential informants participated in the investigation. Accordingly, the Court agrees with the government that it is not required to disclose the identities of any confidential informants because there are none in this case.

Defendants additionally request the addresses and telephone numbers of the government's government employee witnesses and law enforcement officer witnesses in order to properly prepare their defenses and to rebut or impeach the witnesses' statements. The government responds that *Brady* does not require it to disclose the addresses and telephone numbers and that the Rules require it only to disclose the witnesses' names. Although the language of the Rule does not prohibit disclosure, the government cites an Advisory Committee Note to Rule 16 that expresses concern that such a disclosure would discourage witnesses from testifying and lead to improper contact intended to influence the witnesses' testimony.

Although the Court agrees with the government that it has no obligation to provide addresses and telephone numbers pursuant to *Brady*, the analysis is not the same under Rule 16. *United States v. Ducore*, 309 F. Supp. 3d 436, 441 n.5 (E.D. Va. 2018). Indeed, the "address of a government witness is generally a proper subject of defense inquiry and may be necessary for in-and-out-of-court investigation of a witness." *United States v. Cavallaro*, 553 F.2d 300, 304 (2d Cir. 1977) (citing *Smith v. Illinois*, 390 U.S. 129, 131 (1968)). Ordinarily, the Court would balance the potential danger to the witness against Defendants' need for the information. *Id.* But in this case, the government has not voiced a legitimate concern for any witness's safety. Accordingly, the Court grants Defendants Boutte and Lowe's motion to compel to the extent it seeks the government witnesses' contact information. The government must provide this contact information on or before **March 7, 2019**.

C.    The Government's Motion to Compel

The government filed a motion to compel, requesting that the Court order Defendant Boutte to disclose a written summary of the testimony and opinions of his expert witnesses. Rule 16(b)(1)(C) states, "The defendant must, at the government's request, give to the government a

written summary of any [expert witness] testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial." The Rule further provides that this "summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C).

The government asserts that Boutte's expert witness disclosure is inadequate. Boutte designated one expert witness—Robert Magnuson. Boutte discloses that Magnuson will testify "as an independent expert in the areas of government contracts, ethics, fiscal and legislative law, advisory and assistance services." He also states that Magnuson is familiar "with classified and unclassified programs, procedures, and regulations of the U.S. Department of Defense at the time of the conduct alleged in the indictment." Boutte also states that "[t]here are numerous other witnesses with familiarity of the Big Crow Program and its importance to both the national defense and intelligence, *some with both expert and factual knowledge*, all of whom the government has noticed through documents" (emphasis added). Boutte opposes the motion, arguing it is premature because (1) the government did not first make a request to Boutte for the relief it seeks in its motion; (2) the Court vacated the most recent scheduling order on December 8, 2018; and (3) any expert would need the material Boutte sought in his motion to compel before his opinion could be fully formulated.

Boutte's expert disclosure lacks the requisite description of the expert's opinions and the bases and reasons for them. In contrast to what is required under Rule 16, Boutte's disclosure provides only general subjects on which the expert will testify. Accordingly, the Court concludes Boutte has failed to meet the requirements set forth in Rule 16(b)(1)(C). The Court also notes that the expert deadline had passed before the Court vacated the scheduling order dates.

Rule 16(d)(2) provides the Court with broad discretion to impose sanctions on a party who fails to comply with a discovery order. The Court, however, keeps in mind that "it should impose the least severe sanction that will accomplish . . . prompt and full compliance with the court's discovery orders." *United States v. Nichols*, 169 F.3d 1255, 1268 (10th Cir. 1999) (internal quotation marks and citation omitted). The Court does not believe that Boutte has acted in bad faith. Accordingly, the Court orders Boutte to provide the requisite description of his witness's opinions and the bases and reasons for those opinions on or before **April 1, 2019**. In the event that any new material alters any proposed expert witness's opinions, Boutte may supplement his expert disclosure.

## IV.    Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Compel Production of Exculpatory Material (Doc. No. 53); DENIES AS MOOT Defendant's Motion to Compel Disclosure of Discoverable Materials Pursuant to Rule 16 (Doc. No. 70); DENIES AS MOOT Joint Motion to Continue (Doc No. 78); GRANTS IN PART and DENIES IN PART Defendants' Motion to Compel the Production of Unredacted Discovery and the Identification of Confidential Informants, Government Employee Witnesses, and Law Enforcement Officer Witnesses (Doc. No. 99); and GRANTS the United States' Motion to Compel Defendant Boutte to Disclose a Written Summary of Testimony and Opinions of Expert Witnesses (Doc. No. 124).

IT IS SO ORDERED.

Entered for the Court
this the 22nd day of February, 2019

/s/ Joel M. Carson III
Joel M. Carson III
United States Circuit Judge
Sitting by Designation