IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                   1:17-cr-3338-JMC

MILTON BOUTTE,
JOE DIAZ,
ARTURO VARGAS,
and GEORGE LOWE,

      Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MILTON BOUTTE'S MOTION TO COMPEL PRODUCTION AND DENYING DEFENDANT MILTON BOUTTE'S MOTION TO DISMISS**

On April 1, 2019, Defendant Milton Boutte filed a Motion to Compel Production (Doc. No. 134). Subsequently, on April 29, 2019, Defendant Boutte filed a Motion to Dismiss (Doc. No. 145) based on the government's alleged discovery abuses. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion to Compel Production and denies Defendant's Motion to Dismiss.

I.     Background

A grand jury indicted Defendants George Lowe and Milton Boutte with, among other things, knowingly and intentionally defrauding the government and conspiring to do the same. Defendants were affiliated with the Big Crow Program Office ("BCPO") at Kirtland Air Force Base in Albuquerque, New Mexico, and allegedly committed their crimes through their ties to that office. Near the end of BCPO's run—"not later than 2004," according to the indictment—Defendant Milton Boutte, the then-Director of BCPO, allegedly began to engage in illegal activities with others "to obtain money for [BCPO]." Specifically, the indictment alleges that

Boutte "conspired and schemed" with Defendant George Lowe and "other lobbyists, consultants, and contractors" to lobby Congress and other government agencies for money for the benefit of BCPO.[1] The indictment alleges that Boutte and Lowe realized they could misappropriate funds from Small Business Act § 8(a) sole-source contracts to pay for Lowe's lobbying efforts and other unauthorized expenses. But to do so, they needed small businesses. Thus, the two men allegedly further "conspired and schemed" with Defendants Joe Diaz and Arturo Vargas, two owners who owned two small businesses, Miratek and Vartek, to "fraudulently obtain and exploit" § 8(a) sole-source contracts for that illegal purpose. Diaz and Vargas allegedly misappropriated at least $506,000 in funds from two contracts to pay Lowe for his lobbying activities.

## II.   Applicable Law

A defendant may seek discovery under multiple legal authorities. The Due Process Clause requires that the government disclose any evidence to the defendant that "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Supreme Court has clarified that a defendant is entitled to receive exculpatory evidence even if he does not request it. *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) ("Regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government."). The Constitution does not, however, require the prosecution "to divulge every possible shred of evidence that could conceivably benefit the defendant." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the

---

[1] In his Motion to Compel Production, without citation, Defendant declares that the "Court acknowledges that Mr. Boutte did not personally benefit from the activities in the indictment." The Court notes that it has not found or acknowledged that Boutte did not personally benefit from the alleged fraud.

2

defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). And a reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted).

Even though the government has a demanding duty to disclose exculpatory information, it does not have to take affirmative steps to discover information it does not possess. *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001). But this does not mean the prosecutor can engage in willful ignorance. *Brady* requires a prosecutor to "disclose information of which [he or she] has knowledge and access." *United States v. Burton*, 81 F. Supp. 3d 1229, 1249 (D.N.M. 2015). The "prosecution" includes "not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, as well as . . . other arms of the state involved in investigative aspects of a particular criminal venture." *Smith*, 50 F.3d at 824 (internal citation and footnote omitted). Thus, although a prosecutor may be required to search files maintained by governmental agencies that are part of the prosecution team, a prosecutor does not have a duty to obtain evidence from agencies that are not part of the prosecution team. *Id.* This is because

> knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt "a monolithic view of government" that would "condemn the prosecution of criminal cases to a state of paralysis."

*United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *United States v. Gambino*, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)).

Federal Rule of Criminal Procedure ("Rule") 16(a)(1)(E) provides that the government must allow defendants access to documents and objects "within the government's possession, custody, or control" where "(i) the item is material to preparing the defense; (ii) the government

3

intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." The Tenth Circuit has not yet defined "the government" for purposes of Rule 16. The courts that have defined that term interpret it to include only the prosecution team. *See United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989) ("Rule 16(a)(1)[(E)], requires only the production of documents in the hands of the prosecutor, any investigative unit under the prosecutor's control, and any other federal agency allied with the prosecution or involved in the prosecution of criminal litigation."); *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) ("Courts have construed the term 'government' in this rule narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general."); *United States v. Chalmers*, 410 F. Supp. 2d 278, 289 (S.D.N.Y. 2006) ("[T]he Court is not persuaded that the 'government' for purposes of Rule 16 should be any broader than the 'prosecution team' standard that has been adopted in the *Brady* line of cases."); *United States v. Weiss*, 2006 WL 1752373, *7 (D. Colo. June 21, 2006) (considering a defendant's request for documents from a non-party executive agency and concluding that no duty to disclose existed under *Brady* or Rule 16).

"A defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1234 (D.N.M. 2008) (citing *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)). Instead of providing a general description of the information sought or conclusory allegations of materiality, "a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* Courts have interpreted "defense" to mean "an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged." *Id.* (citing *United States v. Armstrong*, 517 U.S. 456,

4

462 (1996)). To make this materiality showing, "the evidence must bear some abstract logical relationship to the issues in the case such that pretrial disclosure would enable the defendant significantly to alter the quantum of proof in his favor." *Id.* (citing *United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993)). The materiality requirement "is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* (internal quotation marks omitted). Ordering production by the government of discovery without any preliminary showing of materiality is inconsistent with Rule 16. *Id.*

Should the government fail to comply with its disclosure responsibilities under Rule 16, Rule 16(d)(2) provides a number of options for the court: "(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). The Tenth Circuit has identified several factors a district court should consider when determining the appropriate sanction:

> (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

*United States v. Martinez*, 455 F.3d 1127, 1130 (10th Cir. 2006). "Applying these factors, the district court should impose 'the least severe sanction that will accomplish prompt . . . and full compliance with the court's discovery orders.'" *Id.* (quoting *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988)).

III. Analysis

Defendant has never been entirely clear regarding the information he seeks from the government. In his latest motion to compel, both the government and the Court believe Defendant appears to seek documents from four additional categories: (1) documents associated with contracts NBCHD04001, W9124Q-06-C-0514, and W9124Q-07-C-0563; (2) contracts W91260-04-C-001 and W91260-05-C-001, and documents associated with those contracts; (3) contracting files of certain "Graybeard"[2] consultants; and (4) Department of Defense Inspector General Report No. DODIG-20012-009 and underlying data. The Court addresses each category before turning to Defendant's Motion to Dismiss.

A. Contracts NBCHD04001, W9124Q-06-C-0514, and W9124Q-07-C-0563

The government represents that it has produced contracts NBCHD04001, W9124Q-06-C-0514, and W9124Q-07-C-0563 and all known work orders, invoices, and records in the possession of the prosecution team for those contracts. It has further provided Defendant a list of contracting officers who are known to have had some involvement with these contracts. Defendant complains that the government has not confirmed these are the complete files of each contracting officer at issue. The Court takes the government at its word from its Response to the Motion to Compel that it has produced all work orders, invoices, and records concerning these contracts.

The government further represents that it requested that Defendant identify with specificity any documents or records that he believes the government omitted. Rather than identify particular documents or records, Defendant demanded "Files Required by FAR [Federal Acquisition Regulation] Part 4, including any subcontractor files" as to each of the contracts involved in this case. Defendant's request is overbroad and not consistent with his limited right to discovery. FAR

---

[2] The term "Graybeard" generally refers to retired military generals.

Part 4 is a sweeping regulation with multiple subparts. The government has represented that it will supplement its prior production if it identifies any additional exculpatory and material documents, records, and information. Accordingly, the Court denies this portion of Defendant's Motion to Compel.

B. <u>Contracts W91260-04-C-001 and W91260-05-C-001</u>

Defendant requests that the government produce the contract files for contracts W91260-04-C-001 and W91260-05-C-001. The government argues that these contracts are not material to any issue in this case. Although the government acknowledges that the indictment references these contracts, it says the contracts are not "featured in any charges in the Indictment" and that it will not use those contracts in its case in chief. The government states that it included these contracts in the indictment "for purposes of clearly distinguishing the contracts at issue from Miratek's other contracts related to the BCPO."

In the Indictment, the government sets forth in footnote 3 that in addition to the contracts at issue in the case, the government had previously awarded Miratek contract W91260-04-C-0001. Footnote 5 similarly informed the reader that Miratek was also party to another joint venture with an entity known as ATA. That joint venture was known as ATAMIR. At the conclusion of contract W91260-04-C-0001, the government awarded ATAMIR contract W91260-05-C-0001. The government admits that "there was some spill-over between the earlier Miratek contract, the ATAMIR contract and the Miratek and Vartek contracts at issue in this case." The government states that it has not attempted to quarantine documents and emails related to W91260-04-C-0001 and W91260-05-C-0001.

Although the government says that Defendants exploited only contracts NBCHD04001, W9124Q-06-C-0514, and W9124Q-07-C-0563, contracts W91260-04-C-001 and W91260-05-C-

7

001 appear to be material to preparing the defense. The Court acknowledges that BCPO was not a party to these contracts. Accordingly, the government must produce contracts W91260-04-C-001 and W91260-05-C-001 and any documents related to those contracts that could be material to preparing the defense—using the government's language, any documents that "spill-over" between the earlier Miratek contract, the ATAMIR contract and the Miratek and Vartek contracts at issue in this case. The government, however, is not required to produce all files required by FAR Part 4 as to these contracts because, as mentioned above, Defendant's request is overbroad. The government may have already provided these documents to Defendant. Defendant should not read this Order to require the government to provide him with every document related to these contracts. He is entitled to only documents that are both material and exculpatory. To the extent the government has not provided Defendant with material and exculpatory documents from these contracts that "spill-over" into the contracts at issue in this case, it must do so. Thus, the Court grants in part and denies in part this portion of Defendant's Motion to Compel.

C. <u>Contracting files of certain "Graybeard" consultants</u>

Defendant requests contracting officer's files relating to "Graybeard" consultants. This broad request encompasses the entire period of time that these individuals served as Department of Defense mentors. Defendant makes clear that he does not limit his request to the "Graybeards'" involvement with the BCPO.

The government has repeatedly informed Defendant that it does not have any contracting files related to these consultants with respect to this case. It further represents that it does not have any knowledge of such files or reason to believe they exist. The government asserts that the premise of Defendant's demands—the notion that a government contracting officer was aware of the "Graybeards" services to the BCPO and authorized and managed personal service contracts

8

for these consultants—is simply not true. The indictment alleges that Defendant Boutte conspired with Defendants Diaz and Vargas to fraudulently divert funds from three contracts to lobbyists and consultants. They concealed the nature of those payments from the government contracting officers who managed those sole-source contracts and approved claims for payment. In the invoices submitted to the government, they disguised consultants as employees of Miratek or Vartek and falsified the hours they purportedly worked under the contracts. The government argues that the "Graybeards" feature in this case only because Defendants fraudulently diverted funds from Miratek and Vartek's contracts to those consultants. The government contends that it cannot produce documents that do not exist. The Court notes that the government represents that it has previously produced Miratek's contracts with the Graybeards and "everything" it has from Miratek or Vartek related to the Graybeards.

Defendant appears recently to have expanded his request to demand all Department of Defense files for General Ronald Hite, General Jay Garner, and Colonel James Clapper. This Court agrees with the government that Defendant is not entitled to *all* files related to contracts or involving the employment of Hite, Garner and Clapper. Even assuming that other Department of Defense agencies have at some time and at some place employed or contracted with Hite, Garner, and/or Clapper, Defendant has failed to show that these employment contracts are material to the issues in his case. Whether other agencies might have lawfully contracted with them does not alter the fact that Defendants in this case allegedly fraudulently diverted funds to consultants and lobbyists from Miratek's and Vartek's contracts under the false pretense that they were employees of Miratek and Vartek. Accordingly, the Court denies this portion of Defendant's Motion to Compel.

D. Department of Defense Inspector General Report No. DODIG-20012-009

Defendant requested that the government produce the Department of Defense Inspector General Report, Report No. DODIG-2012-009, including the files underlying the report. Defendant argues this information is material and exculpatory because, prior to the report, the Department of Defense Mentors, or "Graybeards," were permitted to engage in conduct that the prosecution seeks to criminalize.

The government produced the report and attached it to its response to the Motion to Compel. The Court agrees with the government that nothing in the report suggests that the government has ever permitted fraudulent diversion of government funds to consultants under false pretenses. The government does not have an obligation to provide all of the underlying data to Defendant. However, to the extent any of the underlying data discusses or analyzes activity similar to the activity the Graybeards allegedly took in this case, the government must provide that data to Defendant. Accordingly the Court grants in part and denies in part this portion of Defendant's Motion to Compel.

E. Sanctions

Defendant filed a Motion to Dismiss, arguing that because the documents and witnesses he seeks are so critical, and because "the government has so skewed the documents and witnesses in its Indictment and *James* notice to ignore the evidence and realities of this case, nothing short of dismissal will serve the ends of justice."

The Court disagrees with Defendant. The government has substantially complied with Defendant's vague and convoluted discovery requests and this Court does not believe that the government acted in bad faith. Nor does the Court believe that the government's actions prejudiced Defendant. The Tenth Circuit requires that the Court impose "the least severe sanction

that will accomplish prompt . . . and full compliance with the court's discovery orders." *Wicker*, 848 F.2d at 1061. In this case, the least severe sanction that will accomplish full compliance with the Court's Order is an Order requiring the inspection or production of any additional discovery on or before **June 25, 2019**. Defendant will still have ample time to review the evidence and prepare for trial, which is scheduled to commence on August 5, 2019.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant Boutte's Motion to Compel Production (Doc. No. 134) and DENIES Defendant Boutte's Motion to Dismiss (Doc. No. 145).

IT IS SO ORDERED.

Entered for the Court
this the 4th day of June, 2019

/s/ Joel M. Carson III
Joel M. Carson III
United States Circuit Judge
Sitting by Designation