IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    1:17-cr-3338-JMC

MILTON BOUTTE,
JOE DIAZ,
ARTURO VARGAS,
and GEORGE LOWE,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BOUTTE'S CORRECTED MOTION FOR THE ISSUANCE OF FEDERAL RULE OF CRIMINAL PROCEDURE 17(a) AND 17(c) SUBPOENAS; DENYING AS MOOT DEFENDANT BOUTTE'S MOTION FOR THE ISSUANCE OF FEDERAL RULE OF CRIMINAL PROCEDURE 17(c) SUBPOENA; GRANTING THE GOVERNMENT'S MOTION FOR *JAMES* HEARING; CLARIFYING THE DECORUM OF THE TRIBUNAL; AND CLARIFYING PRIOR ORDERS**

On May 9, 2019, Defendant Milton Boutte filed a Motion for the Issuance of a Federal Rule of Criminal Procedure 17(c) subpoena (Doc. No. 151). The next day, Defendant Boutte filed a Corrected Motion for the Issuance of Federal Rule of Criminal Procedure 17(a) and 17(c) Subpoenas (Doc. No. 153). On June 6, 2019, the Court held a hearing on the corrected motion.[1] For the reasons set forth below, the Court denies the original motion as moot and grants in part and denies in part the corrected motion. This order further grants the government's motion for a

---

[1] Less than three hours before the motion hearing, Defendant Boutte filed a "Notice of Supplemental Authority." Defendant's notice, however, contains no supplemental authority—no citations to case law, statutes, or regulations. *See* Doc. No. 175. This is not the first time Defendant Boutte has filed what amounts to a surreply styled "Supplemental Authority" without leave of court. *See* Doc. Nos. 37, 52, 57, 86. Counsel for Defendant Boutte is advised that further improper filings will be stricken from the record and may result in the issuance of an order to show cause.

*James* Hearing (Doc. No. 120), and clarifies the decorum of the tribunal and some of the Court's prior orders.

I.  Background

A grand jury indicted Defendants George Lowe and Milton Boutte with, among other things, knowingly and intentionally defrauding the government and conspiring to do the same. Defendants were affiliated with the Big Crow Program Office ("BCPO") at Kirtland Air Force Base in Albuquerque, New Mexico, and allegedly committed their crimes through their ties to that office. Near the end of BCPO's run—"not later than 2004," according to the indictment— Defendant Milton Boutte, the then-Director of BCPO, allegedly began to engage in illegal activities with others "to obtain money for [BCPO]." Specifically, the indictment alleges that Boutte "conspired and schemed" with Defendant George Lowe and "other lobbyists, consultants, and contractors" to lobby Congress and other government agencies for money for the benefit of BCPO. The indictment alleges that Boutte and Lowe realized they could misappropriate funds from Small Business Act § 8(a) sole-source contracts to pay for Lowe's lobbying efforts and other unauthorized expenses. But to do so, they needed small businesses. Thus, the two men allegedly further "conspired and schemed" with Defendants Joe Diaz and Arturo Vargas, two small business owners, to "fraudulently obtain and exploit" § 8(a) sole-source contracts for that illegal purpose. Diaz and Vargas allegedly misappropriated at least $506,000 in funds from two contracts to pay Lowe for his lobbying activities.

II.  Applicable Law

Federal Rule of Criminal Procedure ("Rule") 17(a) provides that a party may cause the Clerk of the Court to issue a blank subpoena for a witness to attend and testify at a specific time and place as a matter of course and without judicial intervention. Rule 17(c) allows a party to

require, by subpoena, the production of documents or other physical evidence. Unlike a trial subpoena ad testificandum issued under Rule 17(a), Rule 17(c) confers discretionary power upon the court to direct production of the documents in court before trial or before they are offered into evidence. Fed. R. Crim. P. 17(c). And unlike Federal Rule of Civil Procedure 45(b)(1), a subpoena duces tecum issued under Rule 17 does not require notice to anyone other than to victims of crimes under some circumstances. *United States v. Vigil*, 1:10-cr-2310-JB, 2013 WL 3270995, at *9 (D.N.M. June 3, 2013).

Although more far-reaching than testimonial subpoenas, Rule 17(c) subpoenas are not "intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). The court must exercise its discretion whether to require production of the requested documents pre-trial "in remembrance of the responsibility to prevent Rule 17(c) from being improperly used as a discovery alternative to Rule 16." *United States v. Beckford*, 964 F. Supp 1010, 1022 (E.D. Va. 1997).

### III. Analysis

#### A. Rule 17(a)

Rule 17(a) does not require judicial intervention before the Clerk may issue blank subpoenas for a witness to attend and testify at a hearing. *See* Fed. R. Crim. P. 17(a) ("The clerk must issue a blank subpoena—signed and sealed—to the party requesting it"). Accordingly, the Court grants Defendant's request for the issuance of Rule 17(a) trial subpoenas and directs the Clerk to issue those subpoenas.

#### B. Rule 17(c)

Defendant Boutte also requests leave to issue three subpoenas duces tecum pursuant to Rule 17(c). These subpoenas request information from the United States Department of Defense,

3

the United States Department of the Interior, and the United States Small Business Administration. Prior to the hearing, the government had designated the Department of Defense and Small Business Administration as members of the prosecution team. At the hearing, the government stated that it is in contact with the Department of the Interior and said that it would treat any document requests as if the Department of Interior is a member of the prosecution team.

The drafters of Rule 17 did not intend on parties using the Rule as a discovery rule. *United States v. Carter*, 15 F.R.D. 367, 369 (D.D.C. 1954). The Advisory Committee indicated a Court should permit only a narrow discovery in criminal cases. *Id.* Rule 17's purpose is not to grant additional discovery, but merely to facilitate and expedite trials. *Id.*; *see also Bowman Dairy Co.*, 341 U.S. at 220 (stating that Rule 17(c)'s "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials"). "To construe Rule 17 as a discovery rule would render Rule 16 nugatory and meaningless and would defeat its limitations." *Carter*, 15 F.R.D. at 369. Although the possibility exists that a Rule 17 subpoena could be appropriate to the prosecution team in some circumstances, that possibility is not present in this case. The parties admitted as much at the hearing. This is because a Rule 17 subpoena "is virtually meaningless" where the government actually is in possession of the material. *C.f. United States v. Langford*, CR-08-CO-245-S, 2009 WL 10671369, *25 n.26 (N.D. Ala. July 2, 2009). "If the government has a *Brady* obligation because certain material is in possession of the prosecution team, it is obligated to provide that material to [Defendant] whether he chooses to subpoena it or not." *Id.* The issuance of a Rule 17(c) subpoena to the prosecution team here neither changes the obligation the government has to produce exculpatory and material documents nor imposes a special time frame merely because its terms make such a demand. *Id.* Accordingly, the Court

4

denies the issuance of the Rule 17(c) subpoenas directed to the prosecution team, including the Department of Interior.

C. *James* Hearing

The government filed a Motion for a *James* Hearing, requesting that the Court hold a hearing to resolve preliminary questions regarding the admissibility of various co-conspirator statements. *See United States v. James*, 590 F.2d 575, 579–80 (5th Cir. 1979) (providing for a hearing to determine whether co-conspirator statements are admissible). When ruling on the admissibly of co-conspirator statements, a court may either: (1) hold a *James* hearing outside the jury's presence or; (2) provisionally admit the evidence but require the government to connect the statements to the conspiracy during trial. *United States v. Urena*, 27 F.3d 1487, 1490–91 (10th Cir. 1994). Holding a *James* hearing is the preferred approach. Id. Accordingly, the Court grants the government's motion. The parties shall appear before the Court for a *James* hearing on September 13, 2019 at 1:30 p.m. at the Joe Skeen Federal Building and United States Courthouse in Roswell, New Mexico.

D. Decorum

"Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005). "This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." Id. In addition, attorneys appearing before the Court must adhere to the Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico. L.R. Crim. P. 57.2. This includes New Mexico Rule of Professional Conduct 16-305, which provides that a lawyer shall not engage in conduct which in fact disrupts a tribunal.

During the Court's June 6, 2019 telephonic motion hearing, counsel for Defendant Boutte repeatedly spoke over the presiding judge after multiple admonitions from the Court to stop speaking. Such interruptions by counsel disrupt the proceedings, make it difficult for the parties to focus on the matters at issue, and hinder the Court's ability to engage in reasoned and helpful dialogue with the parties. In addition to the rules of professional conduct and the New Mexico Lawyer's Creed of Professionalism, a longstanding tradition exists that lawyers practicing before this Court will act in a professional, polite and productive manner when addressing the Court and opposing counsel. Conduct such as speaking over the Court and making gratuitous negative comments toward opposing counsel does not comport with the decorum expected in the United States District Court for the District of New Mexico.

At this time, the Court is inclined to believe that the telephonic nature of the hearing may have contributed to counsel's seemingly unprofessional behavior during the June 6, 2019 hearing. To avoid such problems in the future, rather than explore the possibility of sanctions, the Court orders that all counsel personally appear before the Court for all future hearings and conferences in this criminal action. The Court believes this is the least severe action that will accomplish the goal of imposing order, respect, and decorum during the proceedings. Counsel is on notice that disruptive and unprofessional conduct is not acceptable in this district and engaging in such conduct may result in the issuance by the Court of an order to show cause.

E. Clarification of Prior Orders

At the hearing, Defendant Boutte's counsel repeatedly sought to discuss this Court's Order Granting in Part and Denying in Part Defendant Boutte's Motion to Compel (Doc. No. 172). Moreover, his reply in support of his corrected motion also addressed the Court's order. In the reply brief, Defendant Boutte misrepresented portions of the Court's prior orders. Because

6

Defendant Boutte's assertions in his reply brief so grossly misstate both what the Court has previously ordered and the applicable law, the Court will address some of Defendant Boutte's misrepresentations in an effort to maintain clarity in the record.

1. Defendant's *Touhy* Contentions

In his reply brief, Defendant Boutte's seriously misstates the effect of the Court's prior orders involving *United States ex rel Touhy v. Ragen*, 340 U.S. 462 (1951), and the Housekeeping Statute, 5 U.S.C. § 301. Defendant Boutte makes the following representations in his reply brief: (1) "The Court also ordered the Defendant to use *Touhy* procedures for all government information, even though the government is a party to this litigation and it concerns exculpatory information in a criminal case, so Mr. Boutte continued to assert that *Touhy* does not apply"; (2) "Mr. Boutte has incurred substantial unnecessary expense"; (3) "Moreover, because the Court has required Mr. Boutte to use *Touhy* procedures over Mr. Boutte's repeated objection, Mr. Boutte needs this to be decided now to be able to discern whether any privilege will be asserted. *Mr. Boutte also had to resort to Rule 17 because the Court decided that* Touhy *procedures were a prerequisite to obtaining exculpatory and material information*" (emphasis added); and (4) "However, in its Order quashing the initial attempt at Rule 17(c) subpoenas, the Court expanded the defendant's *Touhy* obligations to all documents in the possession of any government agency or all witnesses, regardless of whether they are part of the prosecution team or not."

In its February 22, 2019 Order, this Court held that the government must provide Defendant Boutte with all material and exculpatory information in the possession of the prosecution team. The Court cited *Brady v. Maryland*, 373 U.S. 83 (1963), for the proposition that the Due Process Clause requires the government to disclose any evidence to the defendant that is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Court

7

emphasized that a defendant is entitled to receive exculpatory evidence even if he does not request it. In addition to *Brady*'s discovery requirements, the Court acknowledged the additional discovery obligations the government must follow under Rule 16(a).

After analyzing Defendant Boutte's motion to compel under *Brady* and Rule 16, the Court denied certain requests directed to government agencies that *are not part of the prosecution team*. The Court stated that Boutte must serve any subpoenas on those agencies (who were clearly not part of the prosecution team) in accordance with the regulations adopted pursuant to *Touhy* and the Housekeeping Statute. *See* Doc. No. 128 ("The Court does not require the government to seek this information from agencies or from former government employees who are not collaborating in Boutte's prosecution or who have not provided information to the government in connection with this case. . . . Boutte may, however, utilize Federal Rule of Criminal Procedure 17 to subpoena documents from government agencies that are not part of the prosecution team."). The *Touhy* regulations allow the head of an Executive department to prescribe regulations for the conduct of its employees and for the custody, use, and preservation of its records, papers, and property. The Court then stated that to subpoena a government agent or government employee, a defendant must serve a *Touhy* notice.

Following this ruling, Defendant Boutte subpoenaed members of the prosecution team for production of documents—something the Court's February 22, 2019 Order did not address.[2] The Court granted the government's motion to quash on May 2, 2019 because Defendant Boutte did not seek leave of Court for the issuance of his Rule 17(c) subpoenas. He also violated Rule 17(c) by demanding that the agencies produce these documents at his attorney's office. The Court also

---

[2] Indeed, the motion practice resulting in the February 22, 2019 Order did not seek a ruling with respect to the process for subpoenaing documents from the prosecution team.

noted that Defendant Boutte did not follow *Touhy* when he issued the subpoenas. The Court specifically noted in the May 2, 2019 Order that the February 22, 2019 Order did not contemplate a scenario where Defendant Boutte served a subpoena on a member of the prosecution team. The Court then concluded that a party issuing a subpoena to a United States Attorney must comply with Department of Justice procedures as required by longstanding precedent in the Tenth Circuit. The Court did not hold that Defendant Boutte must issue a subpoena to obtain materials to which he is entitled to pursuant to *Brady* or Rule 16. Defendant Boutte's assertion that the Court made such a ruling is incorrect.

Defendant Boutte admits to confusion with this Court's orders in his reply brief. For clarity's sake, the Court reiterates and reaffirms its prior orders that hold the government has a continuing obligation to provide Defendant Boutte with material and exculpatory documents in the possession of the prosecution team. That duty is completely unrelated to Rule 17. The Court has never held that Defendant must use Rule 17 to obtain material and exculpatory documents that the prosecution must provide pursuant to *Brady* and Rule 16.

2. The Fraud Alleged

In the Court's June 4, 2019 Order, the Court addressed the contracting files of certain "graybeard" consultants. In ruling on a discrete portion of the motion to compel, the Court stated that:

> The indictment alleges that Defendant Boutte conspired with Defendants Diaz and Vargas to fraudulently divert funds from three contracts to lobbyists and consultants. They concealed the nature of those payments from the government contracting officers who managed those sole-source contracts and approved claims for payment. In the invoices submitted to the government, they disguised consultants as employees of Miratek or Vartek and falsified the hours they purportedly worked under the contracts. The government argues that the "Graybeards" feature in this case only because Defendants fraudulently diverted funds from Miratek and

9

> Vartek's contracts to those consultants. The government contends that it cannot produce documents that do not exist.

Defendant Boutte now asserts in his reply brief that "the Court has defined this case in a certain way saying that the fraud in this case, and therefore the relevant documents, concern only the allegation that subcontractors operating and getting paid on the contracts were consultants or subcontractors rather than employees, was hidden from the KO." Boutte continues:

> Mr. Boutte accepts that this is the only allegation of fraud the government makes. Up until now, it has been unclear as to what the government's theory of the fraud was in this case. With this most recent Order, Mr. Boutte can now focus his discovery a little more narrowly, given that the Court has streamlined the case into that single issue.

The Court, in ruling on a discrete discovery issue, did not limit any of the government's theories in this matter. The Court certainly did not "streamline" the case into a single issue when discussing how the "graybeards" feature in this criminal action.

3. Privilege Issues

In the June 4, 2019 Order, the Court ruled on a request that the government produce the Department of Defense Inspector General Report, Report No. DODIG-2012-009, including the files underlying the report. The Court noted the government has no obligation to provide all the underlying data. Instead, it ordered that to the extent any of the underlying data discusses or analyzes activity similar to the activity the Graybeards allegedly took in this case, the government must provide that data to Defendant Boutte.

In his reply brief, Defendant Boutte says, "it is now up to the government to determine if they will comply despite their assertion of privilege." The Court notes that it did not rule on any privilege questions.

10

4. <u>Allegedly Unaddressed Issues</u>

At the motion hearing, counsel for Defendant Boutte repeatedly expressed his displeasure with the Court's June 4, 2019 Order. Defendant Boutte posited that the Court failed to address some of his arguments and document requests from his motion to compel. The items Boutte suggested the Court did not address were either raised by reference to an expert report or were first raised as a list in his reply brief in support of his motion to compel.

The law in this Circuit is well-settled that arguments raised for the first time in a reply brief will not be considered. *Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1237 n.6 (D.N.M. 2012) (citing Tenth Circuit authority stating that arguments raised for the first time in a reply brief are not considered); *Taylor v. United Management, Inc.*, 51 F. Supp. 2d 1212, 1215 n.2 (D.N.M. 1999) (same); *Clifford v. Church Mutual Ins. Co.*, 2:13-cv-853, 2014 WL 5383929 (S.D. Ohio Oct. 21, 2014) (refusing to consider arguments raised for the first time in a reply brief to a motion to compel). The reasons for this prudential doctrine are many, but one stands out in this case, namely that allowing items to be raised for the first time in a reply brief negates the opposing party's ability to respond to and potentially refute the argument. In this case, Defendant Boutte's attempt to raise arguments in his reply is especially unfair considering the very broad nature of the arguments in his motion to compel.

Mr. Boutte's suggestion that the Court did not address all of the items raised in his voluminous expert report is also problematic. To begin with, an expert report is not a pleading and it is not the province of an expert to present legal argument. By incorporating his expert report by reference to his Motion to Compel, Defendant Boutte is ostensibly asking the Court to rule on issues presented by his expert witness. This, of course, is improper on many levels and the Court will not engage in that exercise. First, the expert report is the subject of a motion to strike, which

may to some degree have merit. Second, one could view Defendant Boutte's presentation of the expert report through his motion to compel as a way to "back-door" this potentially objectionable report when it may be otherwise inadmissible.

For the reasons set forth above, Defendant Boutte's argument that the Court was required to address items raised in Defendant Boutte's reply brief and expert report is without merit. Even though Defendant Boutte's presentation of these various issues was improper, the Court—in fact—did thoroughly review and consider each pleading (including the incorporated expert report) at issue before reaching its decision. In the June 4, 2019 Order, the Court held that Defendant's request for files required by Federal Acquisition Regulation ("FAR") Part 4, including any subcontractor files as to each of the contracts involved in this case, was overbroad and not consistent with the limited right to discovery in a criminal action. Indeed, a "defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1234 (D.N.M. 2008) (citing *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)). Instead of providing a general description of the information sought or conclusory allegations of materiality, "a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* Courts have interpreted "defense" to mean "an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged." *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 462 (1996)). To make this materiality showing, "the evidence must bear some abstract logical relationship to the issues in the case such that pretrial disclosure would enable the defendant significantly to alter the quantum of proof in his favor." *Id.* (citing *United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993)).

At the hearing, Defendant Boutte objected to this Court not specifically referencing FAR 4.803, a subpart of FAR Part 4. Defendant Boutte's argument appeared to be that his request was sufficiently specific because he referenced documents "required by" a federal regulation. As explained in the Court's Order, however, that argument fails. Initially, the Court notes that FAR 4.803 discusses "examples of the records normally contained, if applicable, in contract files." The regulation's language is problematic for Defendant Boutte for at least two reasons. First, the regulation does not say that all of the types of documents listed are "required." Thus, to the extent Defendant Boutte and his expert present that argument to the Court, they have misrepresented the regulation's language. Secondly, the regulation Defendant Boutte relies upon contains no fewer than sixty parts and subparts. The sheer breadth of the regulation is such that a party cannot satisfy the requirement that they make requests for discovery with specificity by simply referring to the regulation.

The government has repeatedly represented to the Court that it has produced all relevant contracts and *all* known work orders, invoices, and records in the possession of the prosecution team for those contracts. It has further provided Defendant Boutte with a list of contracting officers who are known to have had some involvement with those contracts. The Court again emphasizes to Defendant Boutte that without specific proof that the evidence he seeks exists, it cannot go behind the government's assertion that it has produced all work orders, invoices, and records concerning those contracts. With respect to the specific documents listed in the reply brief that Defendant believes should be in the contract files, the government has represented that it has produced to Defendant Boutte all material and exculpatory documents. The Court cannot order the government to produce documents that do not exist. The government continues to represent

that it will provide Defendant Boutte with all documents in the prosecution team's possession that are both material and exculpatory.

IV. Conclusion

For the reasons set forth above, the Court DENIES AS MOOT Defendant Boutte's Motion for the Issuance of Federal Rule of Criminal Procedure 17(c) Subpoena (Doc. No. 151); GRANTS IN PART and DENIES IN PART Defendant Boutte's Corrected Motion for the Issuance of Federal Rule of Criminal Procedure 17(a) and 17(c) Subpoenas (Doc. No. 153); and GRANTS the government's Motion for a *James* Hearing (Doc. No. 120). Accordingly, the Court DIRECTS the Clerk to issue the blank Rule 17(a) Subpoenas, but not the Rule 17(c) Subpoenas. The Court additionally ORDERS that counsel shall attend all future hearings and conferences in this matter in person.

IT IS SO ORDERED.

Entered for the Court
this the 8th day of July, 2019

/s/ Joel M. Carson III
Joel M. Carson III
United States Circuit Judge
Sitting by Designation