IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                               1:17-cr-3338-JMC

MILTON BOUTTE,
JOE DIAZ,
ARTURO VARGAS,
and GEORGE LOWE,

    Defendants.

**ORDER CONSTRUING THE UNITED STATES' RESPONSE TO DEFENDANT BOUTTE'S NOTICE OF PUBLIC AUTHORITY AFFIRMATIVE DEFENSE AS A MOTION IN LIMINE TO EXCLUDE THAT DEFENSE AND DENYING THE UNITED STATES' MOTION IN LIMINE TO EXCLUDE DEFENDANT'S PUBLIC AUTHORITY DEFENSE WITHOUT PREJUDICE; GRANTING THE GOVERNMENT'S MOTIONS IN LIMINE; GRANTING IN PART AND DENYING IN PART DEFENDANT BOUTTE'S MOTION IN LIMINE; AND GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION TO INTRODUCE CRIMES, WRONGS, AND OTHER ACTS**

The parties in the above-styled criminal action have filed several pretrial motions. After careful consideration, the Court disposes of the pretrial motions as follows: (1) the Court CONSTRUES the government's response to Defendant Boutte's Notice of Public Authority Affirmative Defense (Doc. No. 167) as a Motion in Limine to exclude that defense and DENIES WITHOUT PREJUDICE that Motion in Limine; (2) the Court GRANTS the government's Motions in Limine (Doc. No. 166); (3) the Court GRANTS IN PART and DENIES IN PART Defendant Boutte's Motion in Limine to preclude both admission of uncharged allegations under Rules 403 or 404(b) and co-conspirator statements not disclosed in *James* Notice (Doc. No. 160); and (4) the Court GRANTS IN PART and DENIES IN PART the government's motion to

introduce crimes, wrongs, and other acts admissible under Rule of Evidence 404(b) (Doc. No. 170).

I.

On May 20, 2019, Defendant Milton Boutte filed a Notice of Public Authority Affirmative Defense (Doc. No. 155). The government filed a response to the notice (Doc. No. 167), denying that Defendant exercised actual or apparent public authority in connection with the criminal offenses charged in the Indictment and requesting that Defendant be barred from advancing the public authority defense at trial. Defendant filed a reply. The Court construes the government's request that Defendant be barred from advancing the public authority defense at trial as a motion in limine. For the reasons set forth below, the Court denies the government's motion without prejudice.

Federal Rule of Criminal Procedure 12.3 provides that a defendant must give notice to the government if he intends to assert a public authority defense. That notice must contain the following information: (1) the law enforcement agency or federal intelligence agency involved; (2) the agency member on whose behalf the defendant claims to have acted; and (3) the time during which the defendant claims to have acted with public authority. Fed. R. Crim. P 12.3(a)(2). In his briefing, Defendant asserts both the public authority defense and entrapment by estoppel. "The public authority defense requires a defendant to show that he was engaged by a government official to participate in a covert activity." *United States v. Apperson*, 441 F.3d 1162, 1204 (10th Cir. 2006). "The defense of entrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments." *Id.* Accordingly, the following must be present: (1) an

active misleading by a government agent; (2) actual reliance by the defendant which is reasonable in light of the identity of the agent; (3) the point of law misrepresented; and (4) the substance of the misrepresentation. *Id.* at 1204–05. In addition, the government agent must be responsible for interpreting, administering, or enforcing the law defining the offense. *Id.* at 1205.

The government argues that Defendant failed to comply with Federal Rule of Criminal Procedure 12.3. Specifically, the government contends Defendant failed to identify the criminal activities that he purportedly believed he had authority to commit and failed to identify the government agency from which his purported authority was derived or any official who allegedly authorized Defendant's misconduct. The government additionally argues that Defendant's purported authority was not derived from a law enforcement agency or intelligence agency. Finally, the government contends Defendant's entrapment by estoppel claim must fail because Defendant has failed to identify a government agent that actively misled him about the state of the law.

The Court acknowledges that Defendant's notice provides little detail of the proposed defense. In his notice, Defendant states that he intends to offer a defense of public authority; that the authority came from various actors on behalf of various agencies, both known and unknown; that the agencies involved are the Department of Defense, the Department of the Army, the Department of Interior, and the Small Business Administration; that he acted on behalf of 18 identified agency members; and that the time during which he claims to have acted with public authority is the period leading up to and covered by the contracts at issue in the indictment. Defendant has complied with the Federal Rule of Criminal Procedure 12.3's notice provision. The Court notes that Federal Rule of Criminal Procedure 12.3 provides a discovery process for the government to request that Defendant disclose the address and telephone number of each witness

3

it intends to rely on to establish a public authority defense. Fed. R. Crim. P. 12.3(a)(4). If a party fails to comply with the discovery provisions, the Court may exclude the testimony of any undisclosed witnesses regarding the public authority defense. Fed. R. Crim. P. 12.3(c).

The Court has considered the government's motion and concludes that such a determination at this stage in Defendant's prosecution would be premature. The Court must hear the evidence at trial in order to evaluate whether the facts in this case warrant a public authority defense. At that point, the Court will determine whether Defendant is entitled to a jury instruction on the public authority defense. Accordingly, although Defendant may pursue his public authority defense at trial, the parties are directed to refrain from any express mention of the public authority defense in opening statements.

To be clear, this decision does not establish that Defendant has a public authority defense or that such a defense is even relevant to this case. Instead, the Court simply is withholding a ruling until the parties present sufficient evidence to support a ruling on the issue. Accordingly, the Court DENIES WITHOUT PREJUDICE the government's motion in limine to exclude Defendant's public authority defense (Doc. No. 167).

II.

On June 3, 2019, the government filed motions in limine (Doc. No. 166). Specifically, the Government seeks to: (1) exclude reference to potential punishment in this case; (2) prohibit defense counsel from making autobiographical references to the jury; and (3) exclude evidence of Defendants' good conduct. Both Defendant Boutte and Defendant Lowe filed a response. Defendant Lowe does not oppose the first or third motion. Defendant Lowe further does not oppose request two as long as the Court mutually applies it. Defendant Boutte does not oppose the first or second motion as long as the Court mutually applies them. Defendant Boutte does,

however, oppose the third motion. The Court GRANTS the government's motion to exclude reference to potential punishment in this case and GRANTS the government's motion to prohibit defense counsel from making autobiographical references to the jury. The Court grants these motions with the understanding that the government is also prohibited from referencing potential punishment in this case and making autobiographical references to the jury.

As to the government's third motion—excluding evidence of Defendants' good conduct—the government seeks to exclude Defendant's specific instances of good conduct, including evidence of awards, commendations, or recognition he has received during his career in the military or otherwise. The government asserts that such evidence is inadmissible under Federal Rule of Evidence ("Rule") 404(a)(1) because the evidence does not relate to a character trait that is pertinent, or relevant to, the criminal charges in the case. And even if the evidence related to a pertinent trait, the government argues evidence of the defendant's specific acts of good conduct would still be inadmissible under Federal Rule of Evidence 405(a), which governs the form of character evidence and allows evidence only as to the reputation of the defendant or as to a witness's opinion of the defendant's pertinent character trait.

Defendant Boutte opposes the motion because he contends the Federal Rules of Evidence define the bounds of character evidence. Specifically, he argues that Federal Rule of Evidence 405 allows parties to use certain specific instances of character and traits as evidence and a blanket prohibition on all specific instances of good conduct would be improper. He contends that specific instances of a defendant's truthful or honest conduct are admissible when fraud is an essential element of the charges.

Rule 404(a) "carefully limits the circumstances under which character evidence may be admitted to prove that an individual, at the time in question, acted in conformity with his

5

character." *Perrin v. Anderson*, 784 F.2d 1040, 1044 (10th Cir. 1986). This Rule's necessity derives from "the high degree of prejudice that inheres in character evidence." *Id.* The Court is reluctant—indeed, in most cases unwilling—"to permit a jury to infer that an individual performed the alleged acts based on a particular character trait." *Id.* The exceptions to this general ban on the use of character evidence "permit criminal defendants to offer evidence of their own character or of their victim's character." *Id.*

Although the Court agrees with Defendant that character evidence in this case cannot be entirely inadmissible, the Court agrees with the government that Defendant Boutte cannot introduce evidence of prior specific incidents of good character. *Id.* Rule 405, which provides the permissible methods of proving character, states that "[w]hen evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). The Rule further provides that specific instances of the person's conduct is admissible "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b).

"Testimony concerning specific instances of conduct is the most convincing, of course, but it also 'possesses the greatest capacity to arouse prejudice, to confuse, to surprise and to consume time.'" *Perrin*, 784 F.2d at 1045 (citing Fed R. Evid. 405 advisory committee note). The Tenth Circuit has cited the advisory committee note to emphasize that such Rule 405(b) evidence may be used only when character is in issue in the strict sense. *Id.* And character is directly in issue "in the strict sense" when that character is "a material fact that under the substantive law determines rights and liabilities of parties." *Id.* Thus, in such a case, a party does not offer the evidence to prove that the defendant acted in conformity with the character trait. *Id.* Rather, the presence or absence of the character trait itself "determines the rights and liabilities of the parties."

6

*Id.* True instances of "character in issue" occur rarely. For example, such a situation arises in the context of a defamation action where a defendant places the plaintiff's reputation for honesty directly at issue by calling the plaintiff dishonest. *Id.*

Defendant Boutte's good character is neither essential element of, nor a defense to, claims of conspiracy to defraud the government, conspiracy to commit wire fraud, and false claims against the government. *See United States v. White*, 737 F.3d 1121, 1137 (7th Cir. 2013) (concluding that a defendant's law-abidingness, or lack thereof, is not an essential element of a wire fraud charge, nor a defense to it); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (concluding that character is "simply not an essential element" of charges of criminal insurance fraud); *United States v. Pantone*, 609 F.2d 675, 680 (3d Cir. 1979) (concluding that character is not an essential element of a Racketeer Influenced and Corrupt Organizations Act charge); *see also United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995) ("The relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to opinion or reputation."). Whether Defendant Boutte has displayed good character at certain points in his life is irrelevant to the charges contained in the indictment. *Marrero*, 904 F.2d at 260.

Defendant Boutte cites one unpublished case from the United States District Court for the Eastern District of Washington, *United States v. Tangen*, No. 2:15-cr-73, 2016 WL 3676451, at *2 (E.D. Wa. July 7, 2016), to support his proposition that specific instances of defendant's truthful or honest conduct are admissible under Rule 405(b) when fraud is an essential element of the charges. *Tangen* appears not only incorrectly decided, but also contrary to Ninth Circuit precedent on the issue. *See Keiser*, 57 F.3d at 856 (stating that evidence should be limited to opinion or reputation unless proof of the character trait by itself actually satisfies an element of the charge).

7

*Tangen* did not cite to *any* case law to support its position on Rule 405. Rather, it cites to an Eleventh Circuit decision, that said "[e]vidence of a criminal defendant's 'pertinent' character trait—such as honesty and truthfulness in a fraud case—is admissible." *United States v. Hough*, 803 F.3d 1181, 1190 (11th Cir. 2015). *Hough* was quoting Rule 404(a)(2)(A) and 405(a), *not* Rule 405(b). The very next sentence of *Hough* reads: "To elicit such evidence, defense counsel may ask a witness who has heard of the defendant about the defendant's *reputation* for the pertinent character trait." *Id.* at 1191 (emphasis added). *Hough* continues: "Defense counsel may also ask a witness who knows the defendant to give his *opinion* of the defendant's character as it relates to the pertinent trait." *Id.* (emphasis added). Nothing in *Hough* allows defense counsel to probe for specific instances of good conduct.

As a result, character is not in issue, and Rule 404 applies. The Court GRANTS the government's motion to exclude evidence of specific instances of Defendants' good conduct.

III.

On June 3, 2019, Defendant Boutte filed a motion in limine to preclude admission of uncharged allegations under Rules 403 or 404(b) and to preclude co-conspirator statements the government did not disclose in their *James* notice. That same day the government filed a motion to introduce crimes, wrongs, and other acts pursuant to Rule 404(b). Defendant Lowe filed a joinder in Defendant Boutte's response to the government's motion.

Under Rule 404(b), evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Fed. R. Evid. 404(b)(1). "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too." *United*

8

*States v. Rodella*, 101 F. Supp. 3d 1075, 1109 (D.N.M. 2015). The Rule, however, provides that this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). "[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity." *United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (quoting *United States v. Cherry*, 433 F.3d 698, 701 n.3 (10th Cir. 2005)). "The Government must articulate precisely the evidentiary hypothesis which a fact of consequence may be inferred from the evidence of other acts." *Rodella*, 101 F. Supp. 3d at 1110. A broad statement merely invoking or stating Rule 404(b) will not suffice. *Id.* The Court looks to a four-part test in order to determine whether to admit this evidence. *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988). First, the government must offer the evidence for a proper purpose. *Id.* Second, the evidence must be relevant. *Id.* Third, the Court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice. *Id.* Fourth, and finally, upon request and pursuant to Rule 105, the Court shall instruct the jury that they shall consider the evidence of similar acts only for the proper purpose for which the government admitted it. *Id.*

The government first seeks to offer evidence of Defendant Lowe's lobbying activities in 2000 and 2001 and emails and other written correspondence that shows Defendant Boutte knew that Lowe was a lobbyist during that period. The government admits those activities preceded the offenses charged in the Indictment and did not concern the contracts at issue in this case. The government nonetheless contends that this evidence is admissible under Rule 404(b) to prove that Defendant Boutte knew that Defendant Lowe was a lobbyist and that the conspiracy to divert funds

9

from the contracts in this case to pay for those unauthorized services was planned and intentional and not a result of a mistake. The government further argues that the evidence tends to show that when Boutte engaged Lowe in 2004 and assured Lowe that the Big Crow Program Office always paid for services rendered, he knowingly committed to pay for the services of a lobbyist.

In his response, Defendant Boutte appears to concede that the government will use the evidence for a proper purpose. He instead says that the evidence does not satisfy the other *Huddleston* elements. Defendant Boutte asserts that the government's evidence that allegedly shows that Boutte had some awareness that Lowe was a lobbyist does not make the fact of whether Boutte committed the crimes charged in the indictment more or less probable. The Court disagrees. The government indicted Boutte for fraudulently obtaining government funds by disguising the nature of Lowe's services to the Big Crow Program Office. Evidence of Boutte's knowledge of the true nature of Lowe's services is relevant to Boutte's knowledge, motives, intentions, and plan. Evidence showing Boutte knew that Lowe was a lobbyist when he retained him and agreed to pay for his services is relevant to the government's alleged conspiracy that he diverted funds from contracts to pay for Lowe's unauthorized services and that action was planned and intentional and not a result of a mistake.

The Court also concludes that the probative value of evidence of Lowe's prior lobbying activities for the Big Crow Program Office is not outweighed by potential for unfair prejudice or by the danger of confusing the issues or misleading the jury. Boutte argues that this evidence will adversely affect the jury's attitude toward Boutte by conflating activities which are not unlawful— knowledge of lobbying—with the charges in the case. He argues this will also possibly confuse the issues or mislead the jury. The Court disagrees. Prejudice, by itself, is insufficient for exclusion. *Rodella*, 101 F. Supp. 3d at 1120. The prejudice must substantially outweigh the

evidence's probative value. *Id.* The fact that Boutte knew that Lowe was a lobbyist is probative to the conduct charged in the indictment and it is not substantially outweighed by any prejudice.

Accordingly, the Court will allow the government to present evidence of Defendant Lowe's prior lobbying for the Big Crow Program Office. At Defendant Boutte's request, the Court will instruct the jury that the evidence should only be considered for the purpose for which the government admitted it.

Next, the government requests that the Court allow it to introduce evidence of Boutte's fraudulent misuse of contract resources for personal benefit. Specifically, the government seeks to introduce evidence that Boutte demanded that he return from Washington, D.C. to New Mexico on a chartered, private flight. The government alleges that his agents at the Big Crow Program Office directed a government contractor to charter a private jet for Boutte to fly from Washington to Albuquerque. The contractor then charged the government $24,644 for the flight. The government contends that this evidence of causing a contractor to incur expenses for his personal benefit shows motive, intent, and absence of mistake.

The Court disagrees with the government. Regardless, the government stated in its reply brief that it would not offer evidence of Boutte's charter flight at trial unless and until Boutte places in issue a character trait that Defendant's prior misconduct bears upon. Such a use is permitted by Rule 404(a)(2)(a). The Court denies the government's request to admit evidence of the charter flight pursuant to Rule 404(b).

Third, the government seeks to introduce evidence of Defendant Boutte's directives to Electronic Warfare Associates, Inc. ("EWA")—a government contractor—in disregard of fiscal law. The government intends to show that EWA was awarded a contract managed by the United States Army Space and Missile Defense Command / Army Forces Strategic Command Contracting

11

and Acquisition Management Office—West. During the span of the contract, the Big Crow Program Office received little sustained financial support from the Army and funded itself by providing services to military agencies on a reimbursable basis. The government states that the lack of funding was a continuous issue for the Big Crow Program Office. From July to October 2008, the Big Crow Program Office allegedly did not have sufficient funds to pay EWA for services under a contract. EWA provided services anyway at a value of $1.5 million. The government argues that incurring such an obligation without funding is prohibited under federal law. The government alleges that Boutte knew about the funding shortfall but stated that suspending work under the contract was not an option. Boutte allegedly assured EWA it would be paid for all services performed. The government argues that this evidence shows intent, plan, and the absence of mistake. The government contends that Boutte's directives to EWA evidences both his control of contractors at the Big Crow Program Office and his disregard for fiscal law and regulations applicable to government contracts. The government further asserts that this evidence shows that Boutte's commitments to pay lobbyists and consultants for unauthorized and unfunded services and his directives to Miratek and Vartek to divert funds to those unauthorized and unfunded lobbyists and contractors were not the result of a mistake but were instead the product of his disregard for the law and regulatory limitations of government contracting.

The Court disagrees with the government that the evidence would be admitted for a proper purpose. The government's stated purpose requires an impermissible propensity inference. Essentially, the government seeks to show that because Defendant treated the EWA contract fraudulently, he must have therefore had little regard for legal prohibitions and contractual limitations with the contracts at issue in this case. This not only is an improper purpose, but also would substantially prejudice Defendant Boutte and possibly mislead the jury. Accordingly, the

government may not introduce evidence of Defendant Boutte's directives to EWA for the purpose of showing Boutte has little regard for legal prohibitions and contractual limitations with the contracts at issue in this case. The Court notes that this ruling does not impact the government's ability to introduce Boutte's September 10, 2009 sworn statement in which he makes several statements bearing directly on his involvement and knowledge of contracts in the Big Crow Program Office.

The government next seeks to introduce evidence of Boutte's disregard for procurement procedures. Specifically, the government sets forth alleged facts surrounding an Army Regulation 15-6 investigation. The government states that defendant's deliberate circumvention of established procurement procedures and guidelines is relevant and tends to show that he has little regard for legal and regulatory restrictions and that his procurement of unauthorized services was not the result of mistake or accident.

Again, this is an impermissible use by the government. Whether Boutte has deliberately circumvented established procurement procedures and guidelines in the past is not relevant or admissible to prove that Boutte acted with little regard for legal and regulatory restriction in this case or that his procurement of unauthorized services was intentional in this case. Accordingly, the government may not introduce this evidence for that purpose. It may, however, offer the evidence to refute any evidence Defendant Boutte offers under Rule 404(a)(2) of a pertinent character trait.

The government intends to introduce evidence of three other acts: (1) diversion of funds to the University of New Mexico; (2) unauthorized subcontracts for Boutte's son; and (3) diversion of funds from a contract issued to EWA to Lowe. The government argues that these events are intrinsic to the charged crimes and thus not subject to the Rule 404(b) limitation. The Court agrees.

Rule 404(b) does not address the crime in question. Rather, it limits evidence of "other" crimes, wrongs, or acts. Fed. R. Evid. 404(b). Similarly, it is well settled in the Tenth Circuit that "Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged." *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009). "Because Rule 404(b) only limits evidence of 'other' crimes—those extrinsic to the charged crime—evidence of acts or events that are part of the crime itself, or evidence essential to the context of the crime, does not fall under the other crimes limitation of Rule 404(b)." *Id.* at 1314–15.

In this case, the government charged Defendant Boutte with conspiring with others to misappropriate and divert funds from three contracts to Defendant Lowe and to other unauthorized lobbyists, consultants, contractors, and expenditures. The government says that the University of New Mexico ("UNM") was one of those unauthorized contractors and expenditures. The government contends that Boutte directed Miratek and Vartek to pay UNM for research for the Big Crow Program Office that was not authorized or approved under their contracts. Vartek grouped the unauthorized payments to UNM with payments to lobbyists, consultants, and other unauthorized expenditures and billed them as "Program Management Support." The government further states that Boutte and his family benefited from the diversion of funds to UNM. Boutte's son was a graduate student at UNM at the time of the payments and his son ostensibly participated in the research Vartek funded. Additionally, the government contends a portion of the money Vartek diverted to UNM went to a stipend for him. In addition, Boutte's son also *directly* received funds from Vartek's § 8(a) contract to provide program management services to the Big Crow Program Office. The government alleges that Boutte caused Vartek to enter into a subcontract with his son for consulting services. As to Lowe, the government alleges that after Miratek's and Vartek's contracts had been exhausted, Boutte combined and conspired with others to shift the

burden of the remaining payments to EWA. EWA paid $300,000 to Lowe. The government contends that these payments show that the Big Crow Program Office and its director were responsible for the commitment to Lowe—not Miratek.

This is all "entirely germane background information which is 'directly connected to the factual circumstances of the crime.'" *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011) (citing *Parker*, 553 F.3d at 1314). Accordingly, Rule 404(b) is inapplicable. Even if it was applicable, however, the government offers the above evidence for a proper purpose. The evidence shows that Boutte had knowledge, motive, intent, and a plan to divert funds from Vartek's contract to unauthorized and unapproved subcontractors—evidence of which is direct proof of the charged conspiracy. Moreover, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

For the reasons set forth above, the government's motion to introduce crimes, wrongs, and other acts pursuant to Rule 404(b) is granted in part and denied in part. For the same reasons, Defendant Boutte's motion in limine to preclude admission of uncharged allegations is granted in part and denied in part.

Finally, Defendant Boutte also moved to exclude any use of alleged co-conspirator statements not identified in the government's *James* notice. In its *James* notice, the government identified approximately 69 instances of co-conspirator statements made in furtherance of the conspiracy that the government intends to introduce at trial. The Court has scheduled a *James* hearing to address these statements. In the notice however, the government reserved the right to argue that co-conspirator statements adduced at trial, but not specifically listed in the notice, should nonetheless be received in evidence.

15

When ruling on the admissibility of co-conspirator statements, a court may either: (1) hold a *James* hearing outside the jury's presence or; (2) provisionally admit the evidence but require the government to connect the statements to the conspiracy during trial. *United States v. Urena*, 27 F.3d 1487, 1490–91 (10th Cir. 1994). Holding a *James* hearing is the preferred approach. *Id.* The Court denies Defendant Boutte's motion in limine. If the government identifies additional co-conspirator statements it would like to introduce into evidence after the *James* hearing in this matter, the government can provide notice to Defendants and the Court will appropriately rule on the admissibility of the additional statements at that time.

The parties shall provide any additional proposed jury instructions that result from this Court's ruling on or before **September 19, 2019**.

IV.

For the reason set forth above, the Court CONSTRUES the government's response to Defendant Boutte's Notice of Public Authority Affirmative Defense (Doc. No. 167) as a Motion in Limine to exclude that defense and DENIES WITHOUT PREJUDICE that Motion in Limine; GRANTS the government's Motions in Limine (Doc. No. 166); GRANTS IN PART and DENIES IN PART Defendant Boutte's Motion in Limine to preclude both admission of uncharged allegations under Rules 403 or 404(b) and co-conspirator statements not disclosed in *James* Notice (Doc. No. 160); and GRANTS IN PART and DENIES IN PART the government's motion to introduce crimes, wrongs, and other acts admissible under Rule of Evidence 404(b) (Doc. No. 170).

IT IS SO ORDERED.

Entered for the Court
this the 9th day of September, 2019

/s/ Joel M. Carson III
Joel M. Carson III
United States Circuit Judge
Sitting by Designation