IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                                   1:17-cr-3338-JMC

MILTON BOUTTE,
JOE DIAZ,
ARTURO VARGAS,
and GEORGE LOWE,

      Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART UNITED STATES' MOTION PURSUANT TO *DAUBERT* TO EXCLUDE INADMISSIBLE ATTORNEY TESTIMONY

On April 22, 2019, the government filed a Motion Pursuant to *Daubert* to Exclude Inadmissible Attorney Testimony (Doc. No. 140). Specifically, the government requests that the Court exclude the testimony of Robert Magnuson that Defendant Milton Boutte proffered as expert opinion testimony under Federal Rule of Evidence ("Rule") 702. For the reasons set forth below, the Court grants in part and denies in part the government's motion.

I.     Background

A grand jury indicted Defendants George Lowe and Milton Boutte with, among other things, knowingly and intentionally defrauding the government and conspiring to do the same. Defendants were affiliated with the Big Crow Program Office ("BCPO") at Kirtland Air Force Base in Albuquerque, New Mexico, and allegedly committed their crimes through their ties to that office. Near the end of BCPO's run—"not later than 2004," according to the indictment— Defendant Milton Boutte, the then-Director of BCPO, allegedly began to engage in illegal activities with others "to obtain money for [BCPO]." Specifically, the indictment alleges that Boutte "conspired and schemed" with Defendant George Lowe and "other lobbyists, consultants,

and contractors" to lobby Congress and other government agencies for money for the benefit of BCPO.[1] The indictment alleges that Boutte and Lowe realized they could misappropriate funds from Small Business Act § 8(a) sole-source contracts to pay for Lowe's lobbying efforts and other unauthorized expenses. But to do so, they needed small businesses. Thus, the two men allegedly further "conspired and schemed" with Defendants Joe Diaz and Arturo Vargas, two individuals who owned small businesses, Miratek and Vartek, to "fraudulently obtain and exploit" § 8(a) sole-source contracts for that illegal purpose. Diaz and Vargas allegedly misappropriated at least $506,000 in funds from two contracts to pay Lowe for his lobbying activities.

## II. Applicable Law

As set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court has "the responsibility to make certain that proffered experts will assist the jury in understanding the evidence and in determining the factual issues it must decide." *Abraham v. WPX Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1186 (D.N.M. 2016). "The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the pertinent admissibility requirements are met." *Id.* at 1187. "Rule 702 allows expert testimony only where the 'witness [is] qualified as an expert by knowledge, skill, experience, training, or education' to offer such opinions." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (quoting Fed. R. Evid. 702). To qualify as an expert, the witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Id.* "The heart of expert testimony is the *foundation*." *Id.* The Court has broad discretion in determining

---

[1] In his Motion to Compel Production, Defendant declares that the "Court acknowledges that Mr. Boutte did not personally benefit from the activities in the indictment." The Court notes that it has never found or acknowledged that Boutte did not personally benefit from the alleged fraud.

2

the admissibility of expert testimony. *Werth v. Makita Electric Works, Ltd.*, 950 F.2d 643, 647 (10th Cir. 1991).

Rule 704(b) provides that, in a criminal case, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Indeed, those matters "are for the trier of fact alone." *Id.* At the same time, the Rule "does not prevent an expert from testifying to facts or opinions from which the jury could conclude or infer that the defendant had the requisite mental state." *Abraham*, 184 F. Supp. 3d at 1191.

## III. Analysis

Defendant Boutte designated Robert Magnuson as an expert witness in the areas of government contracts, ethics, fiscal and legislative law, advisory and assistance services. In addition, Boutte states Magnuson is familiar with classified and unclassified programs, procedures, and regulations of the United States Department of Defense at the time of the alleged conduct in the indictment. Defendant asserts the expert report sets forth: (1) the relevant and applicable regulations and procedures associated with contracts such as those at issue in this case; (2) per those regulations and procedures, the documents that should exist in connection with complex contracts such as those at issue in this case; and (3) which documents are missing that should otherwise have been maintained in connection with the contracts at issue in this case pursuant to relevant and applicable regulations and procedures. Defendant also believes that the report provides context and a summary of the voluminous documentation central to this case. Defendant asserts that the trier of fact will need expert testimony to understand the workings of the contracts because numerous regulations and policies.

The government seeks to exclude this testimony. It argues that Defendant intends to elicit irrelevant and impermissible testimony in the guise of expert opinions. The government first takes issue with the fact that Defendant's expert is an attorney. It believes that Mr. Magnuson is nothing more than a retained attorney making arguments on his client's behalf. The government contends that Mr. Magnuson's proposed opinions go to the weight of the documentary evidence, consist of arguments as to what the documents do or do not show, and threaten to mislead and confuse the jury. The government believes that the trier of fact will understand the documents without commentary from an expert.

Magnuson's thorough education and extensive experience in government contracts appear to give him the specialized knowledge and experience to testify regarding language in the government contracts at issue. Following law school, Magnuson completed the United States Army Judge Advocate Basic Officer Course from the Judge Advocate General's Legal Center and School in Charlottesville, Virginia. He earned completion certificates in-resident specialized training from the Judge Advocate General's Legal Center and School for the following courses: Fiscal Law Course; Contract Attorney's Course; Ethics Counselor Course; Operational Law Course; and Procurement Fraud Course. He has worked in government contracting while employed by the Department of the Army, the Department of Defense, and the National Aeronautical and Space Administration. He has advised government personnel, contracting officers, contracting officers' representatives, and contracting auditors. While deployed in Iraq, he provided contract legal advice to contracting officers and fiscal officers.

Although Magnuson is an attorney and legal knowledge is not scientific or technical knowledge, Magnuson has such specialized knowledge, experience, and education that his custom opinion on government contracting language rests on a substantial foundation. *Abraham*, 184 F.

Supp. 3d at 1203 (citing *LifeWise Master Funding*, 374 F.3d at 928). This specialized or technical knowledge alone, however, is not sufficient to allow Magnuson to testify to the information in his report. *Id.* Magnuson's testimony must also "assist the trier of fact to understand or determine a fact in issue." *United States v. Muldrow*, 19 F.3d 1332, 1337 (10th Cir. 1994). Admittedly, the "line between an inadmissible legal conclusion and admissible assistance to the trier of fact in understanding the evidence or in determining a fact in issue is not always bright." *Abraham*, 184 F. Supp. 3d at 1204 (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997)). In resolving this issue, courts should "determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Id.*

The court concludes that an expert like Magnuson could be helpful to the trier of fact in wading through the technical terms involved in government contracting. *United States, ex rel. Palmer v. C & D Technologies, Inc.*, Civil Action No. 12-907, 2015 WL 4470291, *6 (E.D. Pa. July 22, 2015). This case involves a great deal of technical terminology and significantly implicates highly-regulated relationships between contractors and the government. All of "the customs and language wrapped up in that very specialized world likely will be outside the common experience of jurors." *Id.* In his report, however, Magnuson sometimes interprets contractual provisions in a way that invades the province of the jury. Although the Court will not exclude Magnuson from testifying entirely, the Court notes that Magnuson must remain in the province of the general business and customs of Government contracting and not stray into the realm of legal conclusions about contractual obligations. *Id.*; *see also United States v. Leo*, 941 F.2d 181, 198 (3d Cir. 1991) (noting that it is not permissible for a witness to testify as to governing law, but that courts allow expert testimony concerning business customs and practices). Testimony regarding

legal standards will not assist the Court. Indeed, a "courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart*, 112 F.3d at 1213. The Court will limit Magnuson's testimony so that he will not give his opinion as to what the law requires. Instead, Magnuson may testify concerning industry custom and practice. The Court will provide the government a full and fair opportunity to cross-examine Magnuson. Counsel for Boutte is admonished to narrowly tailor Magnuson's testimony to avoid encroaching into the province of the jury or the Court.

In his report, Magnuson advances 17 itemized opinions (A–Q). The government attacks the appropriateness of each opinion. For the reasons discussed below, the Court grants the government's motion as to opinions A, F, P, and Q, grants in part and denies in part the government's motion as to opinions B, C, and L, and denies the government's motion as to opinions D, E, G, H, I, J, K, M, N, and O.

A. Opinion A

Opinion A states, "Review of documentation fails to show Boutte or any other Big Crow Program Office (BCPO) government employee had knowledge of and/or acknowledged the fraud." The government argues this statement provides an improper opinion regarding Defendant's mental state. Defendant, on the other hand, asserts that this statement is not an opinion as to Defendant's mental state, but instead an opinion that after reviewing the documentation provided by the government in discovery, the documents the government will use at trial do not show that Defendant had knowledge of or acknowledged the alleged fraud. This testimony is not directed to interpretation of contract terms based on trade practice or usage. *Sparton Corp. v. United States*, 77 Fed. Cl. 1, *9 (2007). Moreover, this section of the expert report does not discuss contract terms with specialized meaning. *Id.* The Court will not allow Magnuson to opine on

whether the evidence does or does not show Boutte or any other BCPO employee had knowledge of fraud. Accordingly, the Court grants the motion to exclude Magnuson's testimony as to Opinion A.

B. Opinions B, C, and L

Opinions B, C, and L state as follows:

> B. No BCPO unlawful interference is documented regarding the SBA 8(a) program determinations for MIRATEK Corporation and the subcontracting to the Department of Interior (DOI) Multiple Award Contract (MAC) NBCHD040016 or the subcontract to White Sands Missile Range Contract (WSMR) W912942-06-C-0514 for the Joint Venture between MIRATEK and VARTEK LLC.
>
> C. No BCPO unlawful interference is documented in the DOI MAC (MAC) NBCHD040016 for MIRATEK's provisions of services and supplies to the Big Crow Program Office and the Time-and-Materials contract division was solely a DOI contracting decision.
>
> . . .
>
> L. No BCPO unlawful influence is documented in the provided WSMR W9124Q-06-C-0514 contracting file, which contains more FAR [Federal Acquisition Regulation] required information than the DOI contracting file.

The government argues that these opinions are "little more than arguments of one of defendant's retained attorney's regarding the weight of the documentary evidence." It contends that the jurors are capable of drawing their own conclusions without Magnuson's assistance. The government further asserts that the claim in contention B that no BCPO unlawful interference is documented is not relevant to any issue in the case. As to contention C, the government says that any dispute regarding those events is a matter of fact and not expert opinion. Finally, as to contention L, the government argues that his comments are limited to the absence of documents regarding BCPO's role in awarding a sole-source contract.

7

The Court grants in part and denies in part the government's motion on these opinions. The government argues that only co-defendants Diaz and Vargas allegedly fraudulently induced the Small Business Administration. But Counts 3 and 4 additionally allege that Defendant Boutte executed a scheme with those co-defendants regarding contract W9124Q-06-C-0514. Next, as to testimony going to the absence of documents, such testimony is admissible. Government contracting procedures and principles are not within a juror's common knowledge and experience. *Abraham*, 184 F. Supp. 3d at 1191. An expert witness can often provide insight to the jury regarding the contracting processes and contract files that the government will use in its case against Defendant. An expert may testify as to prototypical documents that, through his review of procedures, he would expect to find in a file relating to the transactions at issue. *United States v. Gross*, 165 F. Supp. 2d 372, 381 (E.D.N.Y. 2001). An expert may further testify to the significance of those prototypical documents. *Id.*

The Court generally agrees with Defendant that Magnuson's testimony on these issues does not undermine witness credibility or remove weighing evidence from the hands of the jury. Instead, the testimony could provide context to the contract files to help the trier of fact understand their specialized meaning, significance, and role in the case. The Court notes, however, that Magnuson may not stray into the realm of legal conclusions by testifying whether BCPO "unlawfully" interfered with or influenced a government contract. The very term demonstrates an attempt to testify not to facts, but to law. Thus, Boutte must narrowly tailor Magnuson's testimony to avoid references to the law. Accordingly, the Court grants in part and denies in part the government's motion to exclude opinions B, C, and L.

C. Opinion E

Opinion E provides:

> E. The documents demonstrate that the DOI Contracting Officer inappropriately appointed MIRATEK employee Ronald Unruh as the Contracting Officer Representative for the DOI MAC contract, allowing a MIRATEK employee performing in the capacity of a "government employee" to approve MIRATEK invoices with no record of any BCPO government employee requesting or concurring with the appointment.

The government does not dispute that this is an accurate reading of the contract documents. It contends, however, that the jury is capable of reading the documents and weighing the testimony and evidence unaided. This opinion strikes the Court as a regurgitation of the record evidence. Although the Court believes this opinion is not particularly relevant, Magnuson's testimony could be helpful in summarizing the evidence. Accordingly, the Court denies the government's motion to exclude opinion E at this time. The government may raise its objection to this opinion at trial.

D. Opinion I

Declaration I provides that "The 'Contracting Officer Representative' is required by FAR to maintain and retain a file on all actions taken during appointment. The current documents do not contain this file."

The government argues the fact that Unruh did not maintain a formal file should be of little surprise because he allegedly posed as a Contracting Officer's Representative in furtherance of the alleged fraudulent scheme. The government contends that this information will come into evidence through the introduction of documents and the examination of witnesses. Again, this testimony—which identifies documents that should have been included in the contracting files pursuant to applicable regulations, policies, and procedures—gives context and significance to the contract files and will assist the trier of fact. The Court denies the government's motion to exclude opinion I.

9

E. Opinions D, G, and J

Magnuson opined in declarations D, G, and J that:

> D. The DOI MAC NBCHD040016 provided contracting file lacks numerous required Federal Acquisition Regulation (FAR) documents but clearly shows in the original SOW [Statement of Work] and its revision that it required MIRATEK's consultants to provide inherently government function related work projects.
>
> . . .
>
> G. The December 1, 2004 revised and approved SOW provided by MIRATEK to the DOI contracting officer did not mask that MIRATEK was adding language that consultants intended to lobby Department of Defense, Federal Departments/Agencies, and Congress and no BCPO government employee is shown to concur.
>
> . . .
>
> J. Inclusion of graybeards as MIRATEK consultants in the DOI and WSMR contracts without including both required documentation for personal service contracts and conflict of interest statements in the current records easily confuses with other contractors and caused the products to be unclear.

The government argues that Magnuson's "skewed construction of the contracts and his ensuing conclusions" are not based on an expert's specialized knowledge and are not the product of reliable principles and methods. The Court will not exclude Magnuson's opinions on this basis. The government may raise its disagreement with Magnuson's assessment of the contracts in its cross examination of Magnuson. The Court is concerned, however, that opinion G may opine on one of the ultimate jury questions. The Court denies the government's motion to exclude opinions D, G, and J at this time. The government may raise its objection to opinion G at trial.

F. Opinion H

Opinion H states that "The MIRATEK invoices provided are incomplete without all required supporting documentation of contractors work and no records showing work product

10

produced by the MIRATEK consultants. The record provided shows neither the DOI contracting officer nor the contractor, 'Contracting Officer Representative,' ever requested this evidence despite large spikes in hours."

The government again argues that a jury does not require an expert's assistance to read documents or to decide what the record shows. It also contends the thrust of Magnuson's argument is that the contracting officer should have detected the fraudulent scheme and intervened. It points out that the negligence of a contracting officer is not a defense to any of the pending criminal charges.

The Court disagrees with the government. Because Magnuson is providing context to the contracting process, the Court denies the government's motion to exclude opinion H.

G. Opinion K

Magnuson contends in Opinion K that:

> K. The Alaska Army National Guard (AANG) MIPR was sufficient on its face to be applied by the DOI contracting officer and there is no documentation that the BCPO government employees were in contact with the AANG as to the funding, only in contact afterwards to discuss BCPO support to AANG. Only MIRATEK employees communicated on the matter.

The government contends that although the MIPR featured prominently in the alleged fraud that followed, no allegation or dispute exists as to whether it was "sufficient on its face." It also posits that this is simply more argument by a retained attorney from the witness stand instead of from counsel table.

The Court disagrees with the government. Magnuson's opinion on the MIPR provides context and a summary of the specialized contract language contained in the government contracts at issue in this case. Accordingly, the Court denies the government's motion to exclude opinion K.

H. Opinions M and N

Opinions M and N provide that:

> M. The WSMR W91260-05-C-0001 contract documents do not explain how contractor Ronald Unruh once again became the Government Point of Contact on this contract. It is also not clear how his signature as a "government employee" acknowledged providing contractor provided services for the invoices.
>
> N. The WSMR W91260-05-C-0001 approved SOW is an obvious "cut and paste" from the original September 2004 DOI SOW, which again has inherently governmental functions listed but clearly removes the "liaison with Congress" language.

The government argues that contract W91260-05-C-0001 does not feature in the charges set forth in the Indictment. But the Indictment clearly states that in addition to contract NBCHD040016, the government awarded Miratek contract W91260-05-C-0001 and that contract W91260-05-C-0001 was a Cost Plus Fixed Fee Level of Effort contract. The government contends that contract W91260-05-C-0001 is extraneous to this case and irrelevant. It argues that discussion of this contract at trial will serve only to create a side-show to distract and confuse the jury.

The Court disagrees. Although Defendants may not have exploited contract W91260-05-C-0001, the government nonetheless included it in the indictment. The government has admitted that "there was some spill-over between the earlier Miratek contract [W91260-04-C-0001], the ATAMIR contract [W91260-05-C-0001], and the Miratek and Vartek contracts at issue in this case." Doc. No. 136 p. 17 n.2. At this time, the Court will not exclude opinions M and N based on relevance and denies the government's motion to exclude opinions M and N. These opinions remain open for exclusion at trial based on foundation.

I. Opinion O

Magnuson contends in Opinion O that "The follow-up WSMR 9124Q-07-C-0563 contract file has not been provided at the time of this report. A few invoices reviewed from January 1–

March 31, 2008 show that the work was on the Foreign Military Sales contract with Canada and thus appropriate as far as the documentation provided demonstrates."

The government argues that this opinion is irrelevant because "while any misrepresentations in the claims for work purportedly performed in Canada may feature in the fraudulent scheme and false claims set forth in the Indictment, there is no allegation that the services provided by the Big Crow Program Office's [sic] to Canada were inappropriate."

The Court disagrees. Because the alleged fraudulent scheme and false acts set forth in the indictment—in the government's words—"may feature" misrepresentations in the claims for work purportedly performed in Canada, the Court denies the government's motion to exclude opinion O based on relevance.

J. Opinions F, P, and Q

The final opinions provide:

> F. Nothing from a BCPO government employee is included in the provided documents establishing a conspiracy between the MIRATEK employees and Lowe in the structuring of Lowe's payments and hours in MIRATEK provided invoices to the government.
>
> . . .
>
> P. The Government Conspiracy Emails fail to show any action by Mr. Boutte in calling for the contractor to commit a fraud, only that MIRATEK employees decided the sole way to implement what Mr. Boutte requested was to fraudulently use Mr. Unruh in the DOI and WSMR contracts as outlined above.
>
> Q. The BCPO program director document activities are consistent with duties assigned to program offices requiring customer funding.

The government argues that Magnuson "coyly argues that gerrymandered portions of the evidence are insufficient to convict" Defendant. The government says opinions F, P, and Q are not opinions based on an expert's specialized knowledge and reliable principles and methods. It

contends instead that these opinions are arguments of an attorney regarding the sufficiency of the evidence against his client. The government contends the jury is capable of reading and evaluating the documents and deciding whether the evidence proves the charges against Defendant. The government, simply put, asserts Magnuson's argument is both factually and legally untenable.

The Court agrees with the government. This testimony is not directed to interpretation of contract terms based on trade practice or usage. Rather than provide context in a complex area, this section of the report merely parrots an argument Defendant's counsel can make to the jury regarding the sufficiency of the evidence. Admission of testimony amounting to no more than an expression of the witness's general belief as to how the jury should decide the case "would give the appearance that the court was shifting to witnesses the responsibility to decide the case." *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977). Accordingly, the Court grants the government's motion as to opinions F, P, and Q.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the government's Motion Pursuant to *Daubert* to Exclude Inadmissible Attorney Testimony (Doc. No. 140).[2]

IT IS SO ORDERED.

---

[2] Defendant filed a Motion for Leave to File Surreply. Defendant contends the government raised new arguments in its reply brief; specifically, arguments (1) regarding what the government believes the "immutable documentary evidence" shows; (2) arguments that Magnuson's opinions stating "should haves" should be excluded; and (3) arguments that Defendant would "prefer to delve into regulatory" minutia. The government did not improperly raise a new issue in their reply. These are not the type of "new arguments" justifying a surreply. The Court DENIES Defendant's Motion for Leave to File Surreply.

Entered for the Court
this the 27th day of January, 2020

<u>/s/ Joel M. Carson III</u>
Joel M. Carson III
United States Circuit Judge
Sitting by Designation