IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                  1:17-cr-3338-JMC

MILTON BOUTTE,
JOE DIAZ,
ARTURO VARGAS,
and GEORGE LOWE,

      Defendants.

## ORDER DENYING DEFENDANT MILTON BOUTTE'S MOTION FOR NEW TRIAL

On June 13, 2023, Defendant Milton Boutte ("Boutte") filed a Motion for New Trial (Doc. 405).[1] In the motion, Boutte contends he discovered evidence that the jury did not, and now must, see. For the reasons below, the Court denies Boutte's Motion for New Trial.

### I.    Background

Boutte headed the Big Crow Program Office ("BCPO") at Kirtland Air Force Base in Albuquerque, New Mexico. In order to obtain additional funding, the government alleges that Boutte contacted Defendant George Lowe, a lobbyist. Lowe testified that he agreed to provide lobbying services for BCPO. The Department of Defense Appropriations Act for fiscal year 2005 included a $7,000,000 plus up—in other words, a legislative earmark above the Executive Branch's budget— for BCPO. Lowe also helped BCPO obtain an additional $1,200,000 plus up from Congressman Knollenberg during the reconciliation process. Lowe testified at trial that

---

[1] Defendant Boutte used two captions for this motion. He styled his motion, "Defendant, Milton Boutte's Motion for New Trial Based Upon New Evidence of Innocence" (Doc. 405). He also included a memorandum of law entitled, "Memorandum of Law in Support of Defendant, Milton Boutte's Renewed Opposed Motion for a Judgment of Acquittal and Motion for Judgment Notwithstanding the Verdict."

Boutte agreed to pay him a flat fee of $15,000 per month for his lobbying services. Lowe also requested ten percent of the appropriations that he obtained—a request he testified to which Boutte agreed.

The government charged Boutte with conspiring with Lowe and others to defraud the United States with respect to false claims in violation of 18 U.S.C. § 286 and conspiring to commit wire fraud in violation of 18 U.S.C. § 1349. Boutte's indicted co-conspirators pleaded guilty. Boutte proceeded to trial and the jury convicted him on both counts. He now asserts that newly discovered evidence entitles him to a new trial.

## II.  Applicable Law

Federal Rule of Criminal Procedure 33 allows a Defendant found guilty to bring a motion for new trial and authorizes a district court to grant such a motion if required in the interests of justice. The Court regards a new trial motion with disfavor and recognizes that it should only grant a new trial motion with great caution. United States v. Quintanilla, 193 F.3d 1139, 1146 (10th Cir. 1999).

Under Rule 33, if a defendant files a new trial motion within fourteen days after the verdict, the defendant may request a new trial on any basis required in the interest of justice. Fed. R. Crim. P. 33(b)(2). But after the fourteen-day period expires, the Court may grant a defendant's new trial request only on the basis of newly discovered evidence. Fed. R. Crim. P. 33(b)(1). To prevail on a motion for a new trial based on newly discovered evidence, a defendant must prove:

> (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by her own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

Quintanilla, 193 F.3d at 1147 (quoting United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997)).

III.   Analysis

In his motion, Boutte says he discovered new evidence prompted by an exchange that occurred at trial. On the second day of trial, Lowe testified about Government's Exhibit 5—a visitor register from BCPO. The register showed that George Lowe and Rod Tinney visited BCPO that day. Lowe testified he visited Boutte in person to discuss his work. The exchange at trial is as follows:

> Q: I am going to turn your attention to Government's Exhibit 5. Did you meet with Mr. Boutte personally in the -- after you had achieved the earmark but before you had informed him that the -- I'm sorry, after you had achieved the plus-up but before you obtained the earmark for him?
>
> A: So respectfully, Mr. Pena, so the two separate occasions. One would have been the 7 million-dollar plus-up that we knew was marked, if you will, for Big Crow, and then it was the subsequent $1.2 million. So my visit here would not have -- it basically would have been a follow-up with regard to the $7 million but not yet discussing the 1.2.

Boutte's new evidence—a sworn declaration dated June 12, 2023 from Rod Tinney—represents that the meeting with Tinney and Lowe was not about the plus up and work that Lowe had performed. Rather, Tinney asserts that the meeting was an introduction between Lowe and Boutte and that Lowe pitched what he might be able to do in the future to help BCPO. Tinney says that Lowe made it clear he was seeking work from BCPO and no one at the meeting suggested work had been done at that point.

Boutte argues that he did not discover Tinney's testimony until after trial and that he did not know what Lowe would say about the September 20, 2004 meeting until trial. In his words, "[b]ecause Mr. Boutte could not possibly know what Lowe would fabricate about the meeting, Mr.

3

Boutte could not have known to seek Mr. Tinney's statement earlier because he did not remember the meeting, either due to the passage of almost twenty (20) years or his health issues." Thus, Boutte argues a lack of diligence on his part is not the culprit of "newly discovered evidence."

The Court disagrees and concludes that Boutte's motion fails on three grounds. It first fails because Boutte's own lack of diligence caused the failure to learn of the evidence, second because the new evidence is merely impeaching, and third because the new evidence is not material to the principal issues involved. First, as to lack of diligence, the government disclosed Exhibit 5 to Boutte before trial.[2] Boutte was at the meeting with Tinney and Lowe. If he forgot what happened that day, he could have attempted to contact Tinney before trial to ask about why he was at BCPO at the same time as Lowe. Seeing Tinney on the visitor register could have also prompted Boutte or his counsel to list Tinney as a witness. Boutte had access to Tinney before trial and could have obtained the "newly discovered evidence." See United States v. Palmer, 766 F.2d 1441, 1446 (10th Cir. 1985) ("Appellant had access to the affiants before trial. Upon the exercise of due diligence, he could have obtained the evidence in question."). Put simply, the "evidence" was discoverable at the time of trial.

Second, Boutte's motion fails because the "evidence" is merely impeaching. Boutte argues that given Tinney's sworn statement, "Lowe's version is patently incredible." Boutte has repeatedly attacked Lowe's credibility to the Court. But the reason we have jury trials is for the

---

[2] The government states that in its original discovery disclosure to Defendant Boutte, on December 26, 2017, the government produced a memorandum of a 2016 interview with Lowe that stated "LOWE was first referred to BCPO by Mr. Rod Tinney, Air Center Helicpoters Inc. (ACHI), Ft. Worth, TX. LOWE wanted to meet Mr. Milton BOUTTE after learning about BCPO's signal jamming capabilities and BCPO's participation in the rescue operation of Jessica LYNCH. The government produced what became Government's Exhibit 5 to Defendant on August 26, 2019. In March 2020, the government produced a memorandum of a March 5, 2020 proffer interview with Lowe. That proffer said that Tinney introduced Boutte to Lowe and that in the latter part of 2004, Tinney contacted Lowe and stated that Boutte needed his help in finding funding for BCPO.

4

jury to determine the facts of the case. And a reasonable jury could credit Lowe's testimony as true. This is not the case of a government witness at trial recanting his or her trial testimony. At most, it is two competing stories of what was said at a meeting. Thus, Tinney's sworn statement is merely impeaching and creates another credibility issue for the jury to determine. See United States v. Kelley, 929 F.2d 582, 586 (10th Cir. 1991) (concluding district court's summary dismissal of new trial motion was proper where the affidavit was merely impeaching).

Third, Boutte's motion fails because the "new evidence" is not material to the principal issues involved. Boutte complains that the trial testimony mentioned above told the jury that Lowe went to the BCPO on September 20, 2004 as a follow-up to the April 2004 contract with Boutte regarding the work he did that summer in obtaining the plus-up and that this was discussed at that meeting. But the testimony elicited was not that Lowe and Boutte discussed the plus-up in front of Tinney on September 20, 2004. The visitor register also reflects a meeting on September 21, 2004, which did not include Tinney. On that day, Lowe met with Boutte and Nick Toomer, an unindicted co-conspirator. And a jury could resolve any difference in recollection between Lowe and Tinney with the acknowledgement that two meetings occurred and Tinney was not at one of them. In addition, the jury heard about other meetings between Lowe and Boutte, such as one in-person meeting in October 2004 in San Diego where Boutte and Lowe agreed that Lowe would receive ten percent of any funds that he successfully directed toward BCPO. The government did not present the contents of the September 20, 2004 meeting at trial and they were not material.

IV.    Conclusion

For these reasons, the Court DENIES Boutte's Motion for a New Trial (Doc. 405).

IT IS SO ORDERED.

Entered for the Court
this the 16th day of June, 2023

<u>/s/ Joel M. Carson III</u>
Joel M. Carson III
United States Circuit Judge
Sitting by Designation